[No. 5668. Decided September 18, 1905.]

PETER J. NIELSEN, *Appellant,* v. NORTHEASTERN SIBERIAN COMPANY, LIMITED, *Respondent.*[1]

APPEAL—REVIEW—THEORY OF TRIAL—SAME AS IN LOWER COURT—TORT OR CONTRACT. When counsel state in the court below that the action is upon contract, it will be tried upon that theory on appeal.

CONTRACTS — PARTLY WRITTEN AND PARTLY ORAL — NEGOTIATIONS CULMINATING IN WRITTEN AGREEMENT. Oral statements of solicitors of the defendant are not part of a written contract of employment signed by the defendant's president and manager, whereby plaintiff agreed to prospect in Siberia for more than one year; since the written contract is presumed to embody the terms of the agreement, and the solicitors had no power to bind the company by an oral agreement, not to be performed within one year.

SAME — AGENTS — SOLICITORS—AUTHORITY—STATEMENTS PRELIMINARY TO EXECUTION OF WRITTEN CONTRACT BY OFFICER OF COMPANY. An agent employed merely to solicit prospectors to engage in the service of the principal, has no authority to make or modify a contract of service for the principal.

CONTRACTS—TO PROSPECT IN SIBERIA—TRANSPORTATION—DESTINATION OR PORT OF DELIVERY—EXPULSION FROM SHIP—BREACH OF CONTRACT—FINDINGS—EVIDENCE—SUFFICIENCY. Where the plaintiff engaged to prospect for the defendant in Siberia, and was transported to the Siberian coast in one of the defendant's vessels, without specification as to the port where he should be landed, except that it was to be on the Siberian coast, it is not a breach of the contract that he was forcibly ejected at a point where the defendant had a station.

Appeal from a judgment of the superior court for King county, Griffin, J., entered July 23, 1904, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action for breach of contract. Affirmed.

*G. M. Emory,* for appellant.

*John P. Hartman,* for respondent.

1Reported in 82 Pac. 292.

Root, J.—On July 6, 1903, appellant and respondent entered into a written agreement by which the former was to be taken by the latter to Siberia, to prospect for precious metals within the limits of a mining concession theretofore granted by the Russian government to respondent. Appellant was to be furnished with transportation, tools, and food, and to have the privilege of prospecting within said territory, and to receive one-half of all values obtained by him. He embarked July 13, 1903, from Nome for the Siberian coast, upon the respondent's steamship "Manauense." Defendant John Rosene was president and manager of the respondent corporation and, as such officer, signed the company's name to the written contract with appellant. Defendant S. S. Connauton was the master in command of the ship upon the voyage. Defendant McCowan was an agent of respondent aboard the Manauense.

The ship reached East Cape, Siberia, July 21, 1903, where respondent requested appellant to land. He refused to do so, requesting that he be put ashore at Rudder's Bay, a point further down the coast, where respondent had no station and where its sea-going vessels did not stop. This being refused, he requested to be carried to Vladimir, a port where the ship would touch on its return to Nome. Respondent's officers told him that he must go ashore or pay his fare back to Nome. He refused to do either. He was then told by the officers that he would be put ashore unless he paid his fare for the return trip or left the vessel voluntarily. He still refused, whereupon the captain and McCowan went to appellant's berth where he was partially undressed, and ordered a number of the Chinese crew to carry him to a launch at the ship's side. Appellant resisted forcibly, but was handcuffed, placed aboard the launch, and carried to the shore. His clothing and personal effects were given him in the launch. He claims that in the melee sixty dollars were stolen from the pockets of his pataloons by the Chinamen. It is his contention that, in addition to the

written contract, there was an oral one—or, rather, that the contract was partly written and partly oral. The basis for this contention is the fact that appellant, before his employment, went to one Perkins, an agent of respondent at Nome, and sought employment as a prospector. Perkins told him to talk with one Armstrong, who seems to have been in the service of respondent and on the lookout for prospectors. Appellant claims that Armstrong told him he could land where he pleased, and be returned to an American port whenever he desired. The written contract required appellant to remain until October, 1904.

Appellant brought this action to recover damages, which he alleged in the sum of $10,150. At the close of plaintiff's case, the action was dismissed as to defendant John Rosene. At this juncture, a motion was made to transfer the case to the Federal court. Whereupon appellant reduced his claim of damages to $1,950, and the trial proceeded before the superior court without a jury. Findings and conclusions were made and entered by the trial judge favorable to respondent. From a judgment of dismissal, this appeal is taken.

Some question is raised as to whether this is an action in tort or one for breach of contract. From the record it appears that appellant's counsel, in open court, made the following statement:

"I will state to the court this action is based purely and simply on a contract and on the breach of the contract. There were certain tortious features about the breach, but the action is none the less based upon the contract."

Appellant having tried the case upon that theory in the superior court, it must be considered here upon the same theory. *Sanders v. Stimson Mill Co.*, 34 Wash. 357, 75 Pac. 974.

The contention that the contract was partly oral we do not think can be sustained. The negotiations with Perkins and Armstrong may have been matters of inducement; but

the only contract was the written one which appellant signed and which respondent signed by its president and manager, Rosene. The conversations, promises, and understandings leading up to a written contract do not constitute a part of the agreement. They culminate in the written instrument which is presumed to embody those matters upon which there has been a meeting of minds. As this was an undertaking not to be completed within a year, it is doubtful whether an oral agreement covering the same would have any validity. Carter's Alaska Code, § 1094; *Miller v. Goodrich Bros. Bank Co.*, 53 Mo. App. 430; *Boyd v. Paul*, 125 Mo. 9, 28 S. W. 171; *Lang v. Henry*, 54 N. H. 57.

There having been a valid written contract, it would seem to be immaterial as to what authority Perkins and Armstrong had touching the matter of employing prospectors— it not being claimed that they, or either of them, made any representations or arrangements other than orally. The written contract being signed on behalf of the company by Rosene, this fact was evidence to appellant as to whom he should deal with concerning matters appertaining to his contract of employment. It would seem from the evidence that Armstrong, upon whose statements appellant seems principally to rely as a part of his contract, was merely a man employed to solicit prospectors to engage in respondent's service. As such he would not have power to make or modify contracts for respondent. *Rich v. Chicago etc. R. Co.*, 34 Wash. 14, 74 Pac. 1008.

It is urged by respondent that appellant is estopped to allege breach of contract, for the reason that, after being landed, he worked for several months according to the terms of the contract, being supplied with tools and subsistence by respondent, and finally returned to Nome upon respondent's ship free of charge. Ordinarily one may not claim the fruits of a contract without assuming its burdens. It is unnecessary, however, to invoke the rule here.

We are unable to see wherein the respondent has been guilty

of a breach of the contract.   Appellant by the written agree-ment engaged to work as a prospector for respondent until October, 1904.   When the vessel conveying him reached the place for landing, he refused to go ashore.   By this refusal he was guilty of a breach of the contract.   Appellant re-ceived a certificate from respondent reciting that he should "have the right to locate and stake mining claims upon any unlocated mineral lands within the limits of the company's concession."   He argues that this gave him permission to be landed and to prospect wherever he wished within said limits.    This contention cannot be upheld.    Neither the contract nor the certificate provided as to where he should be placed ashore, except that it was to be upon the Si-berian coast.   Respondent gave appellant letters to its agents at East Cape, St. Nicholas, and Vladimir.   It does not appear that respondent had stations at ony other place than these, or that this ship ever called at any other ports.   Some smaller craft were used for traveling from place to place along the coast.   It does not appear but that appellant could have gone to any point he wished upon these coasting vessels.   We think there was no breach of the contract on the part of respondent in ejecting appellant from the ship at East Cape.

We are not called upon to consider the tortious features alleged, other than as they have to do with the alleged breach of contract.   We deem the findings and conclusions of the trial court justified, and its judgment is therefore affirmed.

MOUNT, C. J., DUNBAR, FULLERTON, HADLEY, and CROW, JJ., concur.