[No. 13022.   Department Two.   March 15, 1916.]

ANDY AMANN et al., *Respondents*, v. ALEXANDER PANTAGES, *Appellant*.[1]

PRINCIPAL AND AGENT — AUTHORITY OF AGENT — EMPLOYMENT AND DISCHARGE.   Authority by a "representative" of a vaudeville circuit to employ actors does not imply an authority to discharge them.

SAME—DISCHARGE BY AGENT—AUTHORITY—LIABILITY OF PRINCIPAL —TENDER OF SERVICE.   Actors employed by a "representative" of a vaudeville circuit cannot rely upon a "discharge" by a brother of the representative employed in his office and maintain an action for breach of contract against the employer, where they made no effort to communicate with the employer or any tender of their services.

SAME—CONTRACT OF EMPLOYMENT—BREACH— DISCHARGE — TENDER OF SERVICES.   Upon employment of actors in New York for services in a vaudeville circuit to open in a city in a Pacific coast state, tender of services in New York is bad, especially when accompanied by demand for transportation not provided for in the contract.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 20, 1915, upon findings in favor of the plaintiffs, in an action on contract, tried to the court.   Reversed.

*Ryan & Desmond*, for appellant.

*Hastings & Stedman*, for respondents.

BAUSMAN, J.—Pantages, of Seattle, proprietor of a vaudeville circuit on the Pacific Coast, had at New York one Louis Pincus, who, both on his office door and in his stationery, described himself as "representative" of this circuit, and who engaged the actors Amann for performances to begin about three months later at Calgary.   A written contract bore Pantages' name by this representative.   The opening was then postponed by Pincus some ten days, and from Calgary to Spokane, after doing which he departed to Europe, while

[1]Reported in 155 Pac. 1070.

the Amanns, according to agreement, delivered their players' effects to his office.

Waiting in New York, they received, about a month before the opening date, a letter from one Harry Pincus, a brother of Louis Pincus, in which, stating that he did it by authority of Pantages, he "indefinitely postponed" their performances. This communication was undoubtedly a dismissal if Harry Pincus had the right to speak for Pantages. Now plaintiffs show no more than that this man was a "brother of Louis Pincus and that they had seen him in Louis Pincus' office three or four times." Nothing whatever enlightens us as to what rights his brother had given him or what authority he had habitually pretended to or exercised.

This will not suffice. Let us see in the first place what was the authority of Louis Pincus himself. He had not, Pantages says, so much as a right to employ. Plaintiffs, for their part, showing nothing as to his acts in general, are confronted in the instance by proof that he employed them only after submitting their proposals to Pantages. However, suppose Louis Pincus to have authority to employ, this would not give him, as agent or by mere force of law, authority to discharge. *Nielsen v. Northeastern Siberian Co.,* 40 Wash. 194, 82 Pac. 292. And that it is well that this is the law is clear in this very case. For it would plainly be beyond Pantages' intentions to let this agent discharge actors simply because he had either general or special authority to engage them. If he could do this at all, he might do it on the eve of the actor's departure from New York or after the actor had arrived in the West, and thus totally disarrange the circuit. In other words, concede an implied power of discharge, and when does it end?

As for the word "representative," that in itself is an uncertain term. We cannot say from that alone that authority either to employ or to discharge resulted, and plaintiffs have not shown what greater course of agency was tolerated by Pantages. But, as was stated, the dismissal here came

only from a brother of the representative.  Is Louis Pincus shown to have had any right to delegate his authority?  Not a word as to this.  Pantages, for his part, denies that Harry Pincus had any connection with him whatever.

We are clear that plaintiffs had no right to rely on the actions of Harry Pincus.  A telegram or letter from them to the principal was both easy and natural, and those who would run up heavy damages against the principal gave him a poor chance to speak for himself.  We have here Pantages testifying that he awaited these actors in the West and knew nothing of the alleged discharge.  To estop him there is neither usage nor acceptance of benefits nor ratification.

We see nothing in the actions of one Matthews to change this situation, nor in Louis Pincus' saying on his return that he would remedy the trouble.  As to New York being the place to tender performance, we do not so construe this contract, which distinctly fixed the beginning of the services in the West.  But if tender was proper in New York, it was a bad tender, for it was coupled with a demand for railroad tickets unauthorized by the contract, and it would still leave Pantages his right to dispute the unauthorized discharge.

The judgment, which was rendered by the court without a jury, is reversed, and the cause remanded with instructions to enter a dismissal of the action.

MORRIS, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.