STANLEY D. MALCOLM *vs.* THE TRAVELERS INSURANCE
COMPANY.

Middlesex.     February 4, 1931. — April 1, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Agency,* Scope of authority. *Corporation,* Officers and agents.

At the trial of an action against an insurance company for alleged breach
of an oral contract of employment, it appeared that, at the time the
alleged oral contract was made, the plaintiff was employed as a
soliciting agent of the defendant under a contract in writing, of a
standard form used by the defendant containing many detailed stip-
ulations, signed on the defendant's behalf by its president and gen-
eral manager of agencies. There was evidence that the plaintiff
submitted to his local manager and his assistant a plan for insuring
classes in colleges by a form of endowment insurance for the benefit
of the respective institutions, which they investigated to some ex-
tent, and encouraged the plaintiff; that the local manager made a
proposition to the plaintiff, which he stated the plaintiff was "not
to consider" as final, stating that the financial returns to the plaintiff
would be large "if the proposal is acceptable to . . . the home office,"
and that the man "to do business with was" the vice-president and
supervisor of agencies. There was other evidence of interviews of
the plaintiff with one of the defendant's superintendents of agencies,
who said that the plaintiff's manager would tell the plaintiff what
decision had been reached, and that the next day the plaintiff assented
to the suggestion of his manager that they let matters stand as they
were until fall when the classes in colleges were beginning again and
then "pick up where they had left off in the spring and carry on the
sales program they had agreed on." *Held,* that there was no evi-
dence of any contract made with the plaintiff by an agent with
authority from the defendant.

CONTRACT upon an alleged oral agreement described in
the opinion. Writ dated March 19, 1926.

In the Superior Court, the action was tried before
*Keating,* J. Material evidence is stated in the opinion.
The judge ordered a verdict for the defendant and reported
the action for determination by this court.

*E. O. Proctor,* for the plaintiff.

*L. C. Doyle,* (*J. J. Sullivan* with him,) for the defendant.

SANDERSON, J.   This is an action begun in March, 1926, for breach of an oral contract, alleged to have been entered into on or about July 1, 1920.   On October 13, 1919, the plaintiff was employed as an agent of the defendant by a written contract negotiated through the manager of its Boston office.   This contract was in the standard form used by the defendant.   It was signed by the plaintiff and in behalf of the defendant by its president and its general manager of agencies.   The name of Phelps, the local manager, was also appended as the person who nominated the agent.   Evidence was introduced tending to prove that the plaintiff submitted to Phelps and his assistant a plan for insuring classes in colleges by a form of endowment insurance for the benefit of the respective institutions.   Phelps sent his assistant with the plaintiff to a college in Boston to see if the men in authority there would consider the plan, and some examination was also made of it by the defendant's actuaries.

The plaintiff relies upon conversations, to which he testified, admitted subject to the exception of the defendant, to prove the oral contract of employment.   They were in substance that Phelps, addressing his assistant in the presence of the plaintiff, said: "I think the best thing we can do is to take Malcolm out of the shops and make it possible for him to devote all his time to the development of this idea."   To this proposition the assistant assented. Phelps then said to the plaintiff: "I am going, Mr. Malcolm, to make you a proposal but you are not to consider it as final, it can be revised, it can be made to suit you . . . . I suggest that the Travelers pay you $250 a month plus $300 a month for expenses," a sum which might be revised to meet travel costs.   He further suggested that this sum was to be paid until commissions on business written on the plan should be payable, and that the plaintiff would receive in addition ten per cent on all first year's premiums written by the defendant's agents anywhere.   The plaintiff said the arrangement was satisfactory and acceptable, and Phelps then suggested that the financial returns to the plaintiff would be large "if the proposal is acceptable to

the Travelers, to the home office." Phelps also said "that the man for them to do business with was John L. Way," the vice-president and supervisor of agencies, and that he would assume the responsibility of selling the idea to Way. Later the plaintiff was called to the Boston office to meet Mallory, one of the defendant's superintendents of agencies. Phelps said to the plaintiff that he had gone over the plan and proposal with Mallory and that it "was acceptable to the home office, was acceptable to Mallory." Phelps added that the responsibility for the development of the plan had been placed on the Boston office and that the plaintiff would have to justify the faith Phelps had in him. Phelps then invited the plaintiff into another room and introduced him to Mallory saying that Malcolm was the originator of the plan they had talked over that afternoon. Mallory said that his time was limited but that Phelps would tell Malcolm what decision had been reached. Nothing more was then said about an agreement. The following day the plaintiff assented to the suggestion of Phelps that they let matters stand as they were until fall when the classes were beginning again and then "pick up where they had left off in the spring and carry on the sales program they had agreed on." The plaintiff testified that during the summer he did some work on his plan by familiarizing himself with the locations of colleges and universities with relation to the defendant's agencies, relying upon what had been said by Phelps and Mallory. But this could not be considered to be a part performance of the contract because upon his own testimony nothing was to be done until fall. In the fall he called on Phelps and suggested that it was time to go ahead "with the completion of their sales program and putting it into effect." Phelps said there had been no agreement to go ahead with it and no agreement on the part of the defendant to finance the plan. The language used by the plaintiff at this time has some tendency to show that all of the terms of a contract had not been agreed upon. The plaintiff testified that he had been at all times ready, willing and able to carry out his part of the contract. Both Phelps and Mallory denied

that they had entered into any agreement with the plaintiff. A verdict was directed for the defendant and the case reported with a stipulation of the parties as to its final disposition.

The contention of the plaintiff is that the evidence would justify a finding that the language was sufficiently definite to constitute an enforceable contract, that there was evidence of performance on the part of the plaintiff and repudiation on the part of the defendant, and that the only question is whether there was sufficient evidence that the making of such a contract was within the ostensible authority of Phelps to negotiate and of Mallory to conclude.

Upon the testimony Phelps had no authority to bind the defendant by an oral agreement in the terms to which the plaintiff testified, unless Mallory had authority to make such a contract and had delegated his power to act to Phelps. The evidence would not justify a finding that Mallory had been given actual authority to make such a contract, and the first question for decision is whether there was evidence that he had ostensible authority to make such a contract. The plaintiff must have known that the agreement to which he testified made no reference to many of the essential terms of the printed contract of employment under which he was then working, such as the time when it should begin and the manner in which it might be terminated, the obligations in connection with collecting and accounting for premiums, the manner in which the accounts should be kept, the obligation to furnish a bond and the amount of commissions on policies issued. His own contract was also some notice to him of the manner in which, and officials by whom, contracts employing agents were executed. *Nielsen* v. *Northeastern Siberian Co. Ltd.* 40 Wash. 194, 197. If the plan of insurance had the somewhat unusual features to which the plaintiff testified, this fact might have put him upon inquiry to ascertain whether the agents with whom he talked had authority to bind the defendant by what they said. See *Shaw* v. *Stone,* 1 Cush. 228, 245; *Baldwin* v. *Connecticut Mutual Life Ins. Co.* 182 Mass. 389; *Mississippi & Dominion Steamship Co.*

*Ltd.* v. *Swift,* 86 Maine, 248, 259. In *McCrillis* v. *L. Q. White Shoe Co.* 264 Mass. 32, the agent had authority to employ and the only unusual feature of the contract was the amount of the compensation which he bound his principal to pay an employee.

The evidence concerning Mallory's authority tended to prove that as one of the assistant superintendents of agencies, with headquarters in Hartford, from time to time he visited branch offices including the one in Boston; that he considered applications for employment as agents, although he did not talk with all the applicants; that he had at times signed contracts of employment but only in case of absence from Hartford of the general manager of agencies, the superintendent and the other assistant superintendent of agencies, and that Phelps might have seen such contracts; that sometimes a replacement contract is made with an agent without requiring him to present a new written application; that he would state the terms of employment to a prospective agent and if they were acceptable to the agent a written contract issued from the Hartford office would be executed. Mallory testified that he had no authority to enter into an oral contract, that the company never had an oral contract with an agent, and that the defendant had never employed an agent on a monthly salary. The plaintiff had been told by Phelps that Mallory represented Way, a vice-president and supervisor of agencies, but this testimony was not competent to prove the authority of Mallory.

The testimony that the defendant required all of its contracts of employment to be in writing was not disputed, but if this testimony was not believed the case would be left without any evidence of actual or ostensible authority on the part of Mallory or Phelps to bind the defendant by an oral contract of employment. It did not appear that either agent in his dealings with prospective employees had undertaken to bind the defendant by what he said until the negotiations had resulted in a formal agreement executed by the proper officers of the defendant, nor was any evidence introduced to show that the defendant had

by any communication or act held either of them out as having authority to enter into an oral contract of employment. Authority to negotiate agreements of employment to be consummated by a written contract executed by the officers of a corporation does not authorize the agent to bind the corporation by an oral agreement, unless he has been held out by a course of conduct or in some other way as having such authority. See *Markey* v. *Mutual Benefit Life Ins. Co.* 103 Mass. 78, 93; *Hill* v. *Commercial Union Assurance Co.* 164 Mass. 406; *Sears* v. *Corr Manuf. Co.* 242 Mass. 395, 400; *Marston* v. *Boston Publishing Co.* 271 Mass. 307, 313. Upon the evidence neither Phelps nor Mallory could be found to have actual or ostensible authority to bind the defendant by an oral contract of employment with the plaintiff, and he was not justified in believing that such authority existed. He has not sustained the burden of proving the doctrine invoked by him that a principal is bound by the ostensible authority which he has given his agent.

Because of the conclusion reached, we do not decide whether the terms of the agreement as they were stated by the plaintiff were sufficiently definite to be the basis of an enforceable contract; nor whether such authority as Mallory had could be or was delegated by him to Phelps. See *Gerrish Dredging Co.* v. *Bethlehem Shipbuilding Corp. Ltd.* 247 Mass. 162, 167; *Malaguti* v. *Rosen,* 262 Mass. 555, 564.

The judge was right in directing a verdict for the defendant and in accordance with the terms of the report

*Judgment is to be entered for the defendant without costs.*