No. 12271

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

_____

MAYME O'CONNELL HANNIFIN,

     Plaintiff and Respondent,

-vs-

RETAIL CLERKS INTERNATIONAL
ASSOCIATION and VERN RHINEHART,

     Defendants and Appellants.

_____

Appeal from: District Court of the Second Judicial District,
     Honorable John B. McClernan, Judge presiding.

Counsel of Record:

 For Appellant:

   Thomas Joyce, Butte, Montana.
   Benjamin Hilley argued, Great Falls, Montana.
   Patrick Paul, Great Falls, Montana.

 For Respondent:

   Henningsen and Purcell, Butte, Montana.
   James Purcell argued, Butte, Montana.
   Donald C. Robinson argued, Butte, Montana.

_____

Submitted: March 29, 1973

Decided: MAY 4 1973

Filed: MAY 4 1973

_____
         Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a jury verdict rendered in the district court of Silver Bow County against defendant Retail Clerks International Association. The action was brought by Mayme O'Connell Hannifin alleging among other things, that the Retail Clerks International Association had induced Retail Clerks Union Local No. 4 to breach its employment contract with her.

Before reaching the major issue we dispose of two preliminary matters. First is defendant's (appellant herein) challenge to this Court's and the district court's jurisdiction. This challenge is based on defendant's view that this is a "labor law" case and as such is governed by federal law. In a recent decision, Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L ed 2d 473, the United States Supreme Court reaffirmed the preemption by the United States of the complete law of labor relations. While this is true, under our view of the facts and law in this case no labor law issue is presented which need be resolved by federal labor law. The facts in Motor Coach Employees show interference with a collective bargaining agreement. Nothing even similar is found in this case, as will hereinafter appear.

Second is plaintiff's (respondent herein) motion to dismiss the appeal. This motion was based on defendant's alleged failure to file the record within the time limit set out in Montana Appellate Rules of Civil Procedure. The notice of appeal was filed on December 20, 1971. Shortly thereafter defendant ordered a transcript of the proceedings from the official court reporter. When it became apparent that the transcript would not be ready within the forty days provided in Rule 10(a), M.R.App.Civ.P., defendant moved the district court under Rule 10(c) for a ninety day extension of time for the filing of the record. Either through error by the defendant or the district court, the order granting the motion gave defendant until April 28, 1972, to file the record. Under the rule an extension should be granted

from the date of the filing of the notice of appeal. In this case the extension should have been granted until March 19, 1972. On April 28, 1972, defendant filed an order with this Court asking for a thirty day extension, which was granted. On that same day, unknown to defendant, the record was filed. It is on the basis of this late filing that plaintiff claims the appeal should be dismissed.

It appears from defendant's brief on appeal that the difficulty was a lack of communication between counsel for defendant and the court reporter, which resulted in the delay. Under Rule 10(c), M.R. App.Civ.P., this Court has wide discretion in permitting the filing of a record. The pertinent portion of that rule reads:

> "If the district court is without authority to grant the relief sought or has denied a request therefor, the supreme court may on motion extend the time for transmitting the record or may permit the record to be transmitted and filed after the expiration of the time allowed or fixed."

Montana's rule is identical to the federal rule and for that reason the following federal authority is persuasive. In King v. Laborers Internat. U. of No. America, U.L. No. 818, 443 F.2d 273, 276 (6th Cir. 1971), the court held where the record had been filed within the forty days allowed and the appellant's brief had not been timely filed:

> "The rules cited by Appellee are stated in permissive, rather than mandatory language. We are not required to dismiss every appeal which does not meet each of the time limitations in the above-stated rules."

As stated heretofore, this Court has discretion in this type of case, and where, as here, serious issues are presented for review we will not dismiss the appeal.

The action was brought originally against the local union for breach of contract. After discovery proceedings, the complaint was amended to include the retail Clerks International Association, alleging that that Association had unlawfully induced the breach of plaintiff's employment contract. At the close of plaintiff's case,

- 3 -

the Local Union, one of defendants, moved for a directed verdict on all four counts of the complaint; count one being concerned with whether the contract of employment had been breached. The Local's motion, as to count one, was made on the ground the evidence did not show that plaintiff had been discharged. In response to the motion, counsel for plaintiff said:

> "With reference to this, let the record show that the Plaintiff will submit, as to the Retail Clerks Union Number 4, that they will submit their motion is well taken as to counts one, two, three and four of the complaint and I would ask on behalf of my client that the complaint be dismissed as to the Local Union."

The complaint was dismissed as to the Local Union.

Plaintiff, Mayme Hannifin, served as business agent-secretary-treasurer of Local No.4 from July 1954 when she was appointed to fill an unexpired term, until her alleged discharge in 1969. Her term of office would have expired in December 1970. The incidents leading to the controversy took place in September and early October, 1969. On September 22, 1969, Vern Rhinehart went to Butte in his capacity as a representative of the International Association. An executive board meeting was called for the night of September 22. There is dispute in the testimony as to whether it was at Rhinehart's urging that this meeting was called. Present at the meeting were Bernard McGarry, president of the Local; Jerry Kalarchik, vice-president; William C. Smyers, recording secretary; Patsy Thomas, office secretary and clerk for the Local; and Mr.Rhinehart. Mrs. Hannifin did not attend the meeting and there is controversy in the testimony as to whether she was notified of the meeting. Mr. Smyers, testifying as an adverse witness for plaintiff, stated:

> "* * * that the reason the meeting was called was that Vern [Rhinehart] was in town to find out if he could straighten out the contract that was due in Dillon * * *."

The discussion then turned to the difficulties the Local was having with Mrs. Hannifin. Again Mr. Smyers testified:

"* * * and also he mentioned about Mayme missing the meeting in Great Falls and then we started discussing her frequent absences from work."

This discussion apparently resulted in the officers asking for Mr. Rhinehart's advice. He gave the Local three alternatives: (1) they could ask the Internation to put the Local under a trusteeship, (2) charges could be brought against Mrs. Hannifin and after trial she could be removed from office, or (3) the Local could do nothing. The board members then asked Mr. Rhinehart to leave the meeting so they could discuss the matter.

The board, with the exception of Mr. McGarry, voted to ask the International for a trusteeship. This would have meant, if approved by International, all the officers of the Local would have been removed and someone appointed by International would take charge of the management of the Local. The trusteeship was not approved by International. All members of the board voted for the trusteeship, except Mr. McGarry, and they signed a letter to that effect addressed to International's president. On the following day another member of the board, not present that night, signed the letter and it was mailed.

On September 24, Mrs. Hannifin's sister, Mrs. Jewell McLeod, took some dues slips to the union office for Mrs. Hannifin. Mrs. McLeod's testimony was that Patsy Thomas told her at that time that Mrs. Hannifin's job "was gone". During this visit Patsy Thomas gave Mrs. McLeod the union check book so that her sister could sign some checks. Mrs. Hannifin testified that she had this telephone conversation with Patsy Thomas that same day:

"I called Patsy on the morning; the morning of the 24th and I said, 'Patsy are you mad at me?', She said, no, but I believe everybody else is, I said, 'I will be up in a little while.' She said, 'You don't have to come up. Your job is all through. Vern Rhinehart was here Monday night and we had a meeting of the executive board and you are all finished. I pleaded with them and everything. He said there was nothing you could do. He was turning the Union into a trusteeship. There was nothing that could be done about it at all.'"

After this conversation Mrs. Hannifin made no attempt to contact any of the officers of the Local to either substantiate

or confirm what she had been told by Patsy Thomas. As a matter of fact, Mrs. Hannifin filed for unemployment insurance benefits on September 29, the same day she visited the union office to request her last week's paycheck and vacation pay due her. She testified that Mr. Thomas Evankovich was present in the office that morning and she thought he had been sent in by International to run the Local.

The trial centered around the issue of whether, by the actions of Rhinehart, the Local was induced to breach its contract with Mrs. Hannifin. Plaintiff's theory was that by the action of Rhinehart the Local requested the trusteeship and Mrs. Hannifin was removed from office. The controlling issue is whether the district court erred in denying defendant's motion for a directed verdict at the end of plaintiff's case in chief.

Motions for directed verdicts are provided for by Rule 50, M.R.Civ.P. In Mueller v. Svejkovsky, 153 Mont. 416, 420, 458 P.2d 265, this Court established three rules which apply on an appeal from a motion denying a directed verdict:

> "On an appeal from a motion denying a directed verdict there are three rules which apply. (1) The evidence introduced by the plaintiff will be considered in the light most favorable to him. (2) The conclusion sought to be drawn from the facts must follow as a matter of law. (3) Only the evidence of the plaintiff will be considered. Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57."

In light of these rules, this Court cannot reach the conclusion the evidence produced would permit a jury to find that International had induced the Local to discharge Mrs. Hannifin. It is impossible to find anything in the record which would lead to the conclusion Mrs. Hannifin was discharged at all. As has been previously stated, the request for trusteeship was denied by International. The only testimony concerning Mrs. Hannifin's discharge came from plaintiff herself. By her own testimony she indicates her "belief" that the alleged discharge occurred at the executive board meeting on September 22. Her testimony was:

> "Q. Who fired you, Mayme? A. Well, I would say that Vern Rhinehart through the executive board.

"Q. Well, why do you say that? A. Because when I talked to Patsy that morning she told me Vern Rhinehart had advised the executive board that they were going into a trusteeship and I was all through. There was absolutely nothing I could do about it.

"Q. Did Rhinehart himself tell you you were fired? A. No.

"Q. Did any member of the executive board tell you you were fired? A. No, but Patsy Thomas did.

"Q. Is she on the executive board? A. No, she is not.

"Q. What is her status with the Union? A. I'd say she is a clerk of the Union.

"Q. Did you hire her or did they--A. I hired her.

"Q. Did she hold office at your pleasure while you were there. A. Yes, she did.

"Q. You could have fired her if you didn't think she was doing a good job, right? A. Yes.

"Q. She had no authority to fire you? A. No, she didn't, but the executive board as such could have.

"Q. How is that? How could the executive board fire you? A. Because she told me they had taken a procedure, they had gone into a trusteeship so if you go into a trustee-ship you are fired.

"Q. Did she actually go in on---A. I didn't know this.

"Q. Did you inquire? A. No, I didn't because she said its just all sealed, signed and delivered. She said you are fired that's it. There is just nothing that can be done.

"Q. What authority did she have to---A. As a friend of mine I think she told me that.

"Q. So you really don't know whether it did go into a trusteeship or not? A. No, I didn't know.

"Q. Who is the chief executive officer of the Local Union? A. I was the chief executive officer of the Local Union.

"Q. You were the boss? A. And I was the boss.

"Q. And you were familiar with constitution generally I suppose? A. Yes, I was."

The Colorado Court of Appeals in Colorado Civil Rights Com'n v. State School Dist. No. 1, (Col.App.1971), 488 P.2d 83, 86, established a test to determine whether a person has been discharged:

"The fact of discharge does not depend upon the use of formal words of firing. The test is whether sufficient words or actions by the employer 'would logically lead a prudent person to believe his tenure had been terminated.'"

We believe this to be a proper test and we adopt it for use in this case. It must be pointed out that Mrs.Hannifin was not an employee who could be discharged at the will of her employer. She was an elected official of the union, chosen for her position by the entire membership of the Local. The Local had established procedures for the removal of its elective officers. Article V, Section 11, of its constitution reads:

> "All the officers shall serve for the period of their election unless removed for incompetency, neglect of duty, or dishonesty, in accordance with the Constitution of the International Association."

The International constitution provides procedure for the removal of local union officers. The evidence presented by plaintiff can best be summed up in the statement made by Mrs. Hannifin on cross-examination. She responded to the question:

> "Just what information do you have that the International fired you?" with

> "Just what Patsy gave me and what I heard around town and all kinds of things that were said."

This is hardly the type of information which would lead a prudent person to believe that she had been discharged. There is nothing in the record to show that Mrs. Hannifin ever talked to anybody in authority in the Local to confirm her discharge. Her only source of information was the office secretary. It has long been held that an agent of an employer cannot discharge another employee, unless he has the authority to do so. Amann v. Pantages, 90 Wash. 271, 155 P. 1070. No testimony was presented which would indicate Patsy Thomas was empowered to speak for the Local. To the contrary, Mrs. Hannifin was her supervisor.

Earlier in this opinion we pointed out that the complaint was dismissed as to the Local Union on the specific count that referred to the alleged discharge or breach of contract; and that counsel for plaintiff agreed the motion for directed verdict was well taken. Clearly that was correct; and, just as clearly, if there was no breach of contract by the Local Union, the International Union could not have induced a breach that did not occur.

Therefore, we hold as a matter of law that there was no factual dispute over which reasonable men could dispute and the district court erred in denying defendant's motion for a directed verdict. Other issues raised on this appeal need not be discussed in view of the result reached.

The judgment of the district court is reversed and the action dismissed.

------------------------------------------
Associate Justice

We Concur:

------------------------------------------

------------------------------------------
Associate Justices

------------------------------------------
Hon. Jack Shanstrom, District Judge, sitting for Mr. Chief Justice James T. Harrison.

Mr. Justice Gene B. Daly dissenting:

I respectfully dissent to the view of the majority.

The majority opinion contradicts one of our longest standing and most frequently repeated principles of appellate jurisprudence. In the recent case of Resner v. Northern Pacific Railway, _____Mont._____, 505 P.2d 86, 89, 30 St.Rep. 55,60, this Court quoted from Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L Ed 916,923:

> "'Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation or conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where * * * there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.'"

See also: Kirby v. Kelly, _____Mont._____, 504 P.2d 683, 29 St.Rep. 1090; Davis v. Davis, 159 Mont. 355, 497 P.2d 315, 29 St.Rep. 65; Wallace v. Wallace, 85 Mont. 492, 279 P. 374; 66 A.L.R. 587.

This principle of law circumscribing our right to review the evidence is based on the sound premise that the trial court and jury have an obvious advantage over the appellate court in making determinations of fact. They hear and observe the attitude and demeanor of the witnesses firsthand, whereas this Court has only the written record.

An examination of that written record reveals defendant has relied exclusively on the facts (1) the person informing Mrs. Hannifin that her job was lost was subordinate to her in rank, and (2) Mrs. Hannifin chose to pursue her remedy in the district court rather than through internal union verification and appeal channels.

- 10 -

Defendant made little or no attempt to establish several other aspects of its case as fact, including (1) that Patsy Thomas had spoken mistakenly, independently or in excess of her conferred authority, (2) that Mrs. Hannifin had or should have had reason to disbelieve or doubt the word of Patsy Thomas, (3) that Mrs. Hannifin did not, in fact, believe that Patsy Thomas was relaying true information from those in authority to effect her dismissal, (4) that Mrs. Hannifin did voluntarily and with full knowledge of her actions, resign her employment, (5) that Mrs. Hannifin expressly or impliedly waived the protections she was accorded under her employment contract and the constitutions of Butte Local No. 4 and the Retail Clerks International Association, or (6) that defendant or anyone connected with it, made any attempt to correct the claimed misapprehension/they created in the mind of Mrs. Hannifin that her job had been terminated. The jury supplied the answers to these questions of fact based on the evidence presented at trial. It is not the prerogative of this Court to supply its own answers.

There was some testimony indicating that Mrs. Hannifin's job performance was poor and created adequate grounds for dismissal. Perhaps then, it could be rationalized that in this case the end result was just and equitable. Even if this were true, I do not believe the end justifies the means. And indeed, the means employed to circumvent Mrs. Hannifin's rights under her employment contract and the union constitutions are within the purview of constructive fraud, if intentional, or actionable negligence, if inadvertent.

The finding of fact, as made by the jury, was based on substantial, credible and in some aspects uncontradicted evidence. There appears no indication of passion or prejudice on the part of the trial court or jury. The verdict and judgment did no more

than compensate Mrs. Hannifin for the wages the Local Union was contractually obligated to pay her over the remainder of her elected term of employment.

I would affirm the judgment of the district court.

_____
Associate Justice.