588 F.Supp. 1309 (1984)
Ray NUNNALLY and Russell Kerr, Plaintiffs,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Charles Pillard, Lawrence Farnan, Local Union No. 768 of International Brotherhood of Electrical Workers, George Belt, Harvey Jewett, and Matthews McCracken Rutland Corporation, a Louisiana corporation, Defendants.
No. CV 80-105-M.
United States District Court, D. Montana, Missoula Division.
July 19, 1984.
*1310 Karl H. Boehm, Milodragovich, Dale & Dye, Missoula, Mont., for plaintiffs.
Jeremy G. Thane, Worden, Thane & Haines, Missoula, Mont. for Matthews McCracken.
Benjamin Hilley, Hilley & Loring, Great Falls, Mont., for International Brotherhood of Elec. Workers.
Edward A. Murphy, Datsopoulos, MacDonald & Lind, Missoula, Mont., for Local Union, Belt, and Jewett.

OPINION AND ORDER
RUSSELL E. SMITH, District Judge.
The motions for summary judgment are granted, and judgment shall be entered in favor of the remaining defendants[1] and against the plaintiffs on all claims made in the complaint.

GENERAL BACKGROUND
Champion International owned a paper pulp plant near Missoula, Montana. Matthews McCracken Rutland Corporation (MMR) was employed as an electrical subcontractor by the general contractor to do the electrical work required in the modification of the paper pulp plant. MMR signed a collective bargaining agreement with Local 768 of the International Brotherhood of Electrical Workers (Local 768). George Belt was the shop steward representing Local 768 at the construction site, and Harvey *1311 Jewett was the business manager of Local 768. Both Nunnally and Kerr were employed by MMR. Local 768 is affiliated with the International Brotherhood of Electrical Workers (International).

I.

The Statute of Limitations
In my opinion Nunnally's claims are all time-barred. Nunnally's claimed constructive discharge occurred on March 7, 1980. This action was filed on October 17, 1980.
It is difficult in this case to categorize the plaintiffs' claims, but they seem to be grounded in a breach of the collective bargaining agreement between MMR and Local 768, in violation of Section 301 of the Labor Management Relations Act, 1947 (29 U.S.C. § 185) and a breach of the duty of fair representation by the Union defendants. Perhaps there is a claim that the International failed to establish a trusteeship, to Nunnally's damage.
Section 301 of the Labor Management Relations Act, which establishes jurisdiction under both Acts, does not provide a statute of limitations. In DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that, where a federal act provides no period of limitation, the court should borrow the most analogous state or federal statute of limitations. DelCostello, like the instant case, involved a claimed breach of a collective bargaining agreement by the employer and a claimed breach of the duty of fair representation by the Union. The Court held that the six-month limitation expressed in Section 10(b) of the National Labor Relations Act (29 U.S.C. § 160(b)), was applicable to both claims.
If the rule of DelCostello may not be applied retroactively,[2] then the most analogous state statute must be found.
In my opinion the most analogous state statute of limitation here is the six-month limitation established by Mont.Code Ann. § 39-31-404 (1979) dealing with public collective bargaining. The term "unfair labor practice" used in the Montana statute is broad enough to cover plaintiffs' claims. The Ninth Circuit choices of California and Oregon statutes of limitations in Edwards v. Teamsters Local Union No. 36[3] and in McNaughton v. Dillingham Corp. (McNaughton I)[4] for California and Oregon respectively do not control the choice of a statute of limitations for cases arising in Montana.
I conclude, in any event, that the limitation is six months.
The dictum in note 2 of Lumber, Production & Industrial Workers, Local No. 3038 v. Champion International Corp., 486 F.Supp. 812, 813 (D.Mont.1980), is rejected.
The remaining defendants are awarded summary judgment as against Nunnally.
I do not award summary judgment as against Kerr on this ground because I am not sure of the dates on which Kerr's claims arose.

II.

Nunnally's Claims
It may be that, since Nunnally's case is disposed of on the limitations issue, I should refrain from considering whether Nunnally has a claim. However, the plaintiffs have been deposed, and they were questioned at length about their claims. Motions for summary judgment were made by all of the remaining defendants. In the interest of saving time and money, and in the interest of judicial economy, hoping that one appeal will settle all the problems in this case, I will outline here my views on *1312 the individual motions for summary judgment as against Nunnally, apart from the limitations issue.

A. Nunnally v. MMR

Nunnally, a member of Local 768, was first employed by MMR as a wireman on April 9, 1979. He was dissatisfied with the job because he was harassed by George Belt, and he voluntarily quit on June 15, 1979. He went back to work on August 6, 1979, as a wireman and was made a foreman in September 1979. This employment ended on March 7, 1980, when Nunnally claims that he was constructively discharged. Nunnally charges that Belt continually harassed him  that he interfered with Nunnally's performance as foreman. He claims that his tires were slashed and MMR failed to provide supervision over the parking lot to prevent vandalism. He advised MMR of the harassment, but MMR tolerated it. About March 7, 1980, one Gillespie, who had been a superintendent for MMR, left the job. Nunnally called Gillespie and asked why he had quit. Gillespie told Nunnally that he had been told to get off the job for his safety. Nunnally quoted Gillespie as follows: "I was told to get off this job or we will send you home in a box." Gillespie then said to Nunnally, "For your own safety, I advise you to get off that job." Ignoring any hearsay problem, and assuming that Gillespie had been told by management to leave the job, there is no evidence to show why Gillespie's life was in danger, who threatened him, or whether the persons threatening him were hostile to Nunnally. With the exception of one Mitchell, an officer of Local 768, who Nunnally said slashed his tires, there was no personal identification of any individual who committed or threatened any acts of violence to Nunnally or his family. Nunnally claims that the whole pattern of harassment and threats led to his decision to leave the job.
There is undoubtedly a fact question as to whether, by using his power as a shop steward, George Belt did interfere with Nunnally's decisions as a foreman. It is possible that he interfered in the assignment of overtime, in the assignment of jobs, and in other matters which would normally be within the usual responsibilities of a foreman. However, MMR was entitled to make Nunnally's decisions as foreman subordinate to Belt's decisions as shop steward. It is clear from the record that when Nunnally came to Missoula he brought with him some degree of animosity on the part of Union people who had been employed with Nunnally on a previous job. If there was a feud between Local 768, or its officials, and Nunnally, it was not of MMR's making. If there were threats or harassment, they also were not of MMR's making. In short, I reach the same result here which the Supreme Court of Montana reached in Hannifin v. Retail Clerks International Association, 162 Mont. 170, 511 P.2d 982 (1973): namely, that only the acts of the employer can result in a constructive discharge.
Furthermore, in my opinion, neither the Labor Management Relations Act, 1947 (29 U.S.C. §§ 141-187) nor the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. §§ 401-531) require that an employer referee the disputes between its union employees and the union representing those employees, nor protect the employees from acts of violence by the officers of the Union which is the collective bargaining agent.
In my opinion, Nunnally does not have any claim based on federal labor law against MMR, and MMR is entitled to summary judgment for that reason.

B. Nunnally v. the International

There is evidence in the record before the court from which a jury could find that Local 768 failed miserably in its performance of the MMR collection bargaining agreement. The International received complaints from MMR and also from many employees about the methods employed by Local 768, and the International ultimately sent out an International officer who opened a hiring hall and supervised the collective bargaining agreement. During *1313 the time frame encompassing Nunnally's claims, however, the International did nothing.
The International was not a party to the collective bargaining agreement. It did have functions with respect to it, but Local 768 was the exclusive bargaining representative of the employees. Hence the International did not owe to Nunnally any duty of fair representation. Encina v. Tony Lama Co., 316 F.Supp. 239 (W.D. Tex.1970), aff'd, 448 F.2d 1264 (5th Cir. 1971).
It is not directly charged that the International failed to establish a trusteeship for Local 768 to the damage of Nunnally during the times in question, but it is suggested in the briefs that the International had notice of the sorry mess that Local 768 was creating and should have established a trusteeship. Under Section 7, Article IX of the International constitution, the International has power to establish a trusteeship for a local union when "in its judgment such is necessary to protect or advance the interests of its members...." Nunnally claims to have written letters to certain International officers, but he admits that no formal complaint was filed with Local 768 or with the International, and he did not request a trusteeship. I doubt that either the Labor Management Relations Act, 1947 or the Labor-Management Reporting and Disclosure Act of 1959 provides a remedy in damages for a member of a local union affiliated with an international union because of the failure of the international to establish a trusteeship over the local. The proposition becomes even more doubtful when there is no request for a trusteeship by the local member seeking the damage.
In my opinion, Nunnally has no claim against the International and for that reason the International is entitled to summary judgment.

C. Nunnally v. Belt and Jewett

I do not here attempt to deal with Belt's liability under state law.
To the extent that any liability on the part of Belt or Jewett is based upon a violation of the Labor Management Relations Act, 1947, the claims are barred by 29 U.S.C. § 185(b).
Nunnally, citing Eisman v. Baltimore Regional Joint Board, 352 F.Supp. 429 (D.Md.1972), urges that 29 U.S.C. § 185(b) does not bar the remedy for violation of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. §§ 401-531) by officers of the Union. While interference with Nunnally's duties as foreman might be considered a breach of the duty of fair representation under the Labor Management Relations Act, 1947, it does not appear that the acts of Belt or Jewett had the effect of violating the rights created by the Labor-Management Reporting and Disclosure Act of 1959.
In my opinion, Nunnally has no claim against Belt or Jewett based on federal labor law, and for that reason Belt and Jewett are entitled to summary judgment as to Nunnally.

D. Nunnally v. Local 768

On the basis of the record before me, I think there is a fact question as to whether Local 768 fairly represented Nunnally. There is evidence from which a jury might infer that Local 768, through its officers, knew that Belt was persecuting Nunnally by the use of his power as a Union steward. I think that the acts of Belt in interfering with Nunnally's job as a foreman may well have violated the duty of fair representation that Local 768 owed to Nunnally. If the acts of slashing tires, making threats, and the like, were done by Belt for reasons having some connection with Nunnally's union activity, and Local 768 either authorized or ratified those acts, then Local 768 would be liable.
In my opinion Nunnally may have a claim against Local 768, and Local 768 would not be entitled to summary judgment except for the statute of limitations.

*1314 III.

Kerr's Claims

A. Kerr v. MMR and Local 768

Kerr is a member of Local 44 of the International. He deposited his traveler's card with Local 768. Local 768 had five referral books which distinguished, among other things, between those with and those without the proper classification as a journeyman wireman. Kerr, who was qualified by Local 44 as a journeyman technician, and not as journeyman wireman, was registered in Book 4 by Local 768. On three separate occasions he failed the journeyman wireman's test administered by Local 768.
Kerr was referred to MMR and was hired as a wireman on September 18, 1979. On February 6, 1980, there was a reduction in force, and twenty-one electrical workers including Kerr were laid off. Section 15 of Article II of the collective bargaining agreement gives the employer the right to determine the number of workers it needs as well as the right to decide which employees should be laid off. In his deposition, Kerr testified that he did not know of anything wrong in the way he was handled in the layoff. MMR had the right to do what it did.
Kerr's thesis seems to be that the layoff was dictated by the Union for the purpose of putting the Union in a position to discriminate against Kerr in the hiring of replacements. There are no facts to support this claim. It may be that the Union told MMR that it should first lay off those employees who were in Book 4 because they were not qualified journeyman wiremen. If so, Kerr has no claim because he was not qualified as a journeyman wireman.
As to the tests, Kerr stated that he examined the last test that he took and the answers and that, although a few questions were incorrectly graded, not enough were incorrectly graded to change the result. He regarded the test as fair. Kerr's deposition testimony elicited by the leading questions of his counsel reveals the following:
Q Then what you are saying is that someone on the Examination Committee or someone within Local 768 substituted your answers, juggled your answers, or in some fashion manipulated the test scores?
A I feel they did, yes.
Q And is it your opinion that that activity, combined with the erroneous grading of questions which were properly answered, would have led to a passing grade on any one of those tests?
A On the second and third, I think they possibly could have.
This evidence is insufficient to support Kerr's claim.
MMR and Local 768 are awarded summary judgment as to Kerr.

B. Kerr v. Belt and Jewett

Kerr's deposition is barren of facts which support any kind of a claim against Belt or Jewett.
Belt and Jewett are awarded summary judgment as to Kerr.

C. Kerr v. the International

The International had less notice of Kerr's claims than it did of Nunnally's.
For the reasons stated in connection with Nunnally, the International is awarded summary judgment as to Kerr.
NOTES
[1] The action has previously been dismissed as to Charles Pillard and Lawrence Farnan.
[2] See McNaughton v. Dillingham Corp. (McNaughton II), 722 F.2d 1459 (9th Cir.1984); Edwards v. Teamsters Local Union No. 36, 719 F.2d 1036, 1040 (9th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984).
[3] 719 F.2d 1036 (9th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984).
[4] 707 F.2d 1042 (9th Cir.1983), reh'g denied, 722 F.2d 1459 (9th Cir.1984).