No. 84-433

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

MICHAEL J. SCHEITLIN, Personal
Representative of the Estate of
Edward E. Scheitlin, Deceased,

Plaintiff and Respondent,

-vs-

R & D MINERALS, a Montana
corporation,

Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lino A. Marsillo, Missoula, Montana

For Respondent:

Leaphart Law Firm, Helena, Montana
Jardine, McCarthy & Grauman, Whitehall, Montana

Submitted on Briefs: February 28, 1985

Decided: July 2, 1985

Filed: JUL 2 1985

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an Order of the District Court, Fifth Judicial District of the State of Montana, Madison County. On November 15, 1978, Edward E. and Vaeda G. Scheitlin entered into a contract to sell certain mining properties and certain personal property to R & D Minerals. R & D was given immediate possession of the property and the right to begin mining. It was obligated to make monthly installment payments, the last one due on December 31, 2000.

On August 16, 1983, Michael Scheitlin, as personal representative of the Estate of Edward and Vaeda Scheitlin, filed a complaint in Madison County District Court which asked that R & D Minerals be declared in default on the contract. During the course of the ensuing litigation R & D Minerals filed for bankruptcy. On April 13, 1984, the United States Bankruptcy Court for the District of Montana remanded the case to the Montana State District Court, Madison County, for the determination of the following matters concerning the above-mentioned contract between R & D Minerals and the Scheitlin estate:

> 1. The current status (terms and conditions) of any agreements between R & D Minerals and the Scheitlin estate;
>
> 2. The rights and liabilities of the parties under the current contract or agreement;
>
> 3. When the sellers are legally obligated to provide buyers with clear title;
>
> 4. The status of sellers' title;
>
> 5. The amounts, if any, due to the sellers under the current contract; and
>
> 6. Any other issues stipulated to by R & D Minterals and the Scheitlin Estate.

2

After an evidentiary hearing, and pursuant to the order of the Bankruptcy Court, the District Court on May 31, 1984, issued an order containing the following findings:

> "1. The only contract in existence between the parties is the Mining Property Sale Agreement of November 15, 1978, as amended on February 25, 1980, and May 8, 1980;
>
> "2. R & D is in default of the contract obligations by virtue of its failing to make the required payments;
>
> "3. The amount owing Scheitlin may be calculated from an examination of the contract and by the records of the designated escrow agent;
>
> "4. The rights and liabilities of the parties to the contract are limited to the specific terms and conditions of that contract and none other.
>
> "5. Scheitlin's obligation to provide marketable title is now moot, but that if the contract were in good standing, Scheitlin was obligated to provide marketable title at any time prior to the R & D's making the final payment;
>
> "6. The status of R & D's title to the properties is moot, given its default;
>
> "7. There was no novation of the original contract, there having been no executed agreement between the parties."

R & D Minerals appeals from these findings of the trial court and raises the following issue for review: Is the purchaser of mineral claims, upon notification of serious title defects, justified in ceasing installment payments after the passing of a reasonable period in which the vendor took no meaningful action to correct said defects?

The rule in Montana is that a seller under an installment sales contract does not have to produce marketable title until the date set for final payment and tender of the deed. Silfvast v. Asplund (1933), 93 Mont. 584, 592, 20 P.2d 631, 636. R & D does not dispute that

3

this is the rule in Montana but argues that there are exceptions applicable to this case.

First, R & D contends that the contract "expressly contemplates that the vendor was to produce marketable title well in advance of the closing date." The contract provides the following under the heading, Marketability of Title to Real Property:

>"Prior to October 15, 1979, the sellers will cause to be furnished to the purchaser abstracts of title for such mineral claims as are the property of the sellers, and will permit the purchaser reasonable time, not to exceed sixty (60) days, to have such abstracts examined by an attorney of its own choice. Should such examination disclose the title to such properties to be unmarketable, then the sellers shall take such steps as may be necessary to render the same marketable, including a quiet title action, all at sellers' own expense."

The contract further provides for the setting up of an escrow account, requiring the escrow to "deliver such instruments, documents and papers to the purchaser at the time of final payment hereunder." We find that neither of these provisions is inconsistent with the rule in Silfvast requiring that marketable title be produced no earlier than the time of final payment. The contract provides that sellers, upon notification of discrepancies in title, " . . . will immediately take any necessary steps to bring such items into conformity with their warranty." However, the contract does not contemplate that purchasers can withhold payments in order to coerce the sellers into correcting title. Rather, a specific remedy is provided:

>"Upon discovery of a breach of sellers' warranties concerning ownership or lien obligations, or sellers' failure to keep current any underlying obligations not assumed by purchaser and affecting the real or personal property, purchaser may,

4

at its option, correct any deficiency by paying any outstanding amount due, lien or encumbrance, or by initiating legal proceedings to clear any defects in title. Sellers agree to cooperate fully with purchaser in correcting any such deficiency and agree that any legal proceeding may be brought in their names. The costs, including attorneys' fees and court costs, incurred by purchaser in applying any amounts due, obtaining the release of any liens or otherwise correcting any defects of title shall be deducted from the purchase price called for hereunder and may be offset against any payments due sellers."

Even assuming that there were defects in title, R & D did not invoke the remedy provided by contract. Consequently, by terminating payments R & D was in breach of contract and properly held in default by the District Court.

Second, R & D argues that even if the contract does not contemplate that marketable title be provided prior to the closing date, the purchaser may demand marketable title if there are defects in the seller's title that are incurable. In other words, if it is apparent that the seller cannot acquire marketable title by closing then the purchaser is justified in halting payments on the contract. By making this argument R & D assumes that there were defects in the Scheitlin's title that could not be cured. However, there is nothing in either the record on appeal or the District Court transcript which supports this assumption. Furthermore, the contract provides for the possibility of an incurable defect as follows:

"If any defects of title cannot be corrected to conform to the sellers' warranties, the parties agree to renegotiate the purchase price to reflect the difference in value between what was bargained for by the purchaser and what sellers actually delivered. Failing agreement in this regard the parties agree to submit that issue for determination by the District Court of

5

the Fourth Judicial District of the State of Montana in and for the County of Missoula."

R & D's argument that incurable defects in the seller's title justifies withholding payments on the contract must fail since, even if there were evidence of incurable defect, there has been no resort to the remedy provided by contract.

R & D further argues that the Scheitlins are guilty of fraud and misrepresentation for selling property with incurable defects in the title and that R & D was within its rights in withholding payments. We note: 1. The record does not support that there are incurable defects in title. 2. Rule 8(c), M.R.Civ.P. states that fraud is an affirmative defense that must be pleaded in the answer. R & D's answer contains no pleadings concerning fraud and/or misrepresentation. 3. The transcript of the May 30, 1984 hearing before the State District Court contains no allegations of fraud or misrepresentation. 4. This is the first time that R & D Minerals has raised the issue of fraud and misrepresentation in this litigation. As we have noted often times before, this Court will not consider on appeal issues that have not been raised below. See, e.g., Rustics of Lindberg Lake v. Lease (Mont. 1984), 690 P.2d 440, 41 St.Rep. 2092.

Finally, respondent asks us to dismiss this appeal because of appellant's failure to comply with Rule 10(c), M.R.App.Civ.P. Rule 10(c) provides that the record on appeal must be submitted to this Court within ninety days of the notice of appeal. Ninety days from the filing of the notice of this appeal expired on September 26, 1984, and the record was not forwarded to this Court until October 3, 1984. In Hannifin v. Retail Clerks (1973), 162 Mont. 170, 172-173, 511

6

P.2d 982, 984, we noted that Rule 10(c) gives this Court wide discretion in permitting the filing of a record, and we quoted from that rule as follows: "If the District Court is without authority to grant the relief sought or has denied a request therefore, the Supreme Court may on motion extend the time for transmitting the record or may permit the record to be transmitted and filed after the expiration of the time allowed or fixed." In this case both the appellant, who requested an extension for transmitting the record to more than ninety days from the filing of the appeal, and the District Court, which granted the request, though it had no authority to do so, indicated a relaxed attitude about the Appellate Rules which we do not encourage. However, the violation in this case was not egregious and there is no evidence that it was anything but inadvertent. Under these circumstances we refuse to dismiss.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices