Jack Stanislaw, J.
Plaintiff Sinkoff Beverage Co., Inc., moves for the preliminary enjoining of defendant, Jos. Schlitz Brewing Company, from the sale of its products to other than plaintiff in Suffolk County and that continued exclusive sale to *447 it, all pending the determination of its action for a permanent injunction.
In 1960 the parties contracted in writing regarding plaintiff’s wholesale purchase of beer from defendant. The agreement specifically provided that it might be terminated at any time without cause or notice by either party. No exclusive rights were granted, but Sinkoff is nevertheless claiming the existence of an “ understanding ” making it defendant’s exclusive Suffolk County distributor from the time of the 1960 agreement to date. As a practical matter, for these past six years plaintiff has actually been Schlitz’ exclusive distributor in Suffolk County. However, on June 8, 1966, Schlitz notified Sinkoff that it was discontinuing its sales and deliveries to Sinkoff, in 10 days.
Plaintiff devotes considerable of its facilities just to the handling of the business the result of six years of exclusive distribution of defendant’s products. It claims the privilege, nowhere to be found in the agreement with Schlitz, of a year’s notice of termination of the relationship. First, the diminution of its gross sales and net profit is alleged to be serious enough to raise a question of its ability to continue in business altogether. Then too, Sinkoff believes itself entitled to more than the 10 days’ notice of termination it received based upon the continuing, exclusive-in-fact relationship. Plaintiff argues that reasonable notice is required in these circumstances, and that a reasonable period would be one year.
Schlitz responds not only by pointing to the terms of the 1960 agreement but also by showing that it had expressed dissatisfaction with Sinkoff’s wholesaling of its product in November, 1965, and several more times until it finally terminated the relationship. Furthermore, defendant denies the existence of any parol understanding or arrangement between the parties. In addition, defendant notes that the contract refutes any such possibility as either emanating from it or available at all other than in writing.
As to the extracontraetual, verbal franchise Sinkoff relies upon we find ourselves, and even more particularly Sinkoff, bound by the writing which expresses no such exclusivity and in fact acknowledges the complete absence of such status. In the face of these terms Sinkoff has not shown enough to extricate itself by properly establishing other than a simple distributorship.
The auxiliary issue presented is apparently one of first impression. Belying on section 2-309 (subd. [3]) of the Uniform Commercial Code, plaintiff argues that it is entitled to “ reasonable notification ’ ’ of the termination of the contract. The cited section so provides, 1 ‘ except on the happening of an agreed *448 event * * * An agreement dispensing with notification is invalid if its operation would be unconscionable.” The court has the power to determine the issue of unconscionability and may limit the application of a clause found to be so in order to avoid an unconscionable result (Uniform Commercial Code, § 2-302). A hearing may be directed to aid the making of such determination (Uniform Commercial Code, § 2-302). The Official Comment for this section of the code advises that “ The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.” Further on, the Comment visualizes the power extended the courts as directed against one-sided, oppressive and unfairly surprising contracts, but not against the consequences of uneven bargaining positions or even simple old-fashioned bad bargains.
It seems too, that the hearing called for is mandatory rather than discretionary once the court has initially accepted a possibility of unconscionability (see 1 Anderson’s Uniform Commercial Code, § 2-302:5). Therefore, the precise question must at first be whether we can see a specter of oppression in the termination clause of the instant contract as of the time the contract was made.
Applying the. required limitation of time to the question we may not take into consideration the volume increase in plaintiff’s business and plaintiff’s subsequent expansion-and development ' of facilities and expenses due to and in reliance upon its continued relationship with defendant. For all that appears the mere creation of any relationship between Sinkoff and Schlitz was, at that first point in time, of great benefit to both and perhaps even particularly favorable (and thus especially inoppressive) to Sinkoff.
We find no basis for a reasonable belief that the termination clause of the contract might have been unconscionable. The motion for a preliminary injunction is denied, without prejudice (noting the absence of any data relevant, to conditions existing when the contract was executed in I960)'.