J. TOM McCUSKER AND ELLSABETH M. McCUSKER, PLAINTIFFS AND APPELLANTS, *v.* JOHN M. ROBERTS, GALLATIN LUMBER COMPANY, WESTERN GENERAL ENTERPRISES AND EDWARD M. CHAUNER, DEFENDANTS AND RESPONDENTS.

No. 11407.
Submitted Jan. 15, 1969.
Decided April 1, 1969.
452 P.2d 408.

514

Lyman H. Bennett, Jr., argued, Bozeman, for appellants.

H. A. Bolinger, Jr., argued, Berg, O'Connell & Angel, Michael J. O'Connell, argued, Robert M. Holter argued, and Robert E. Heath, argued, Bozeman, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Action by a homeowner against a builder, a lumber company and its manager, and a subdivision developer for damages arising out of construction of a house. The builder counterclaimed for foreclosure of a labor and materialman's lien and for slander. From a judgment denying all claims of the home owner and awarding the builder $5,493.92 on his lien foreclosure and $10,000 damages for slander, and from the denial of the homeowner's motion for judgment notwithstanding the verdict or for a new trial, the homeowner appeals.

Plaintiffs are J. Tom McCusker and Elisabeth M. McCusker, his wife, hereafter referred to collectively as the homeowner. They purchased two lots in the West Park Manor subdivision to the city of Bozeman from defendant Western General Enterprises (the subdivision developer) and hired defendant John M. Roberts (the builder) to construct a residence for them on these lots with building materials largely furnished by defendant Gallatin Lumber Company. Defendant Edward M. Chauner, the president and manager of the lumber company and also an officer of the subdivision developer, was the individual with whom the homeowner primarily dealt in his dealings with the lumber company and the subdivision developer.

On May 15, 1964 plaintiffs agreed to purchase two building lots for $6,500, paying one-half of the purchase price then and signing the purchase contract and paying the other half about August 19. Discussions were had with Chauner and Roberts concerning construction of a residence. According to plaintiffs an oral contract was entered into on July 7 whereby the builder, the lumber company, and the subdivision developer agreed to build the house for $32,000, which price included the cost of the lots. In any event construction proceeded with material and labor bills submitted to and paid by the homeowner at the end of the months of July, August, and September. On October 12, the homeowner instructed Chauner that he didn't want defendant Roberts to work on his house any more and gave Chauner a list of 32 complaints he had concerning construction. Thereafter the lumber company took over completion of the house under a written contract. The house was completed in December and the homeowner paid the lumber company for labor and materials under the written contract.

According to the homeowner, the total cost of the house and lots, exclusive of an electrically heated driveway, was $57,612. The homeowner sued the builder, the lumber com-

pany and its manager, and the subdivision developer for breach of contract, fraud, conspiracy and negligence claiming $70,752.58 compensatory damages and $46,000 punitive damages.

The case was tried by jury in the district court of Gallatin County with the Honorable Jack D. Shanstrom, district judge presiding. The jury returned two verdicts: (1) in favor of defendants and against the homeowner on all claims of the latter, and (2) judgment in favor of the builder for the amount claimed on his lien foreclosure plus $2,500 compensatory and $7,500 punitive damages for slander. Judgment was entered accordingly. Thereafter the homeowner moved for judgment notwithstanding the verdict against all defendants collectively, alternately against each defendant individually, or in the alternative for a new trial. The court denied this motion and the homeowner appeals from the judgment and denial of his motion.

The issues presented by the homeowner for review upon this appeal are 15 in number. As these issues are intertwined and overlapping, we shall summarize the fundamental and underlying issues in this fashion:

1. Was there a breach of contract with the homeowner to construct the house for $32,000, including the cost of the lots?

2. Did defendants or any of them commit fraud and deceit upon the plaintiffs?

3. Did defendants illegally conspire between themselves for their joint benefits?

4. Were defendants or any of them negligent in consructing the house through the use of inferior materials or poor workmanship?

5. Were plaintiffs entitled to compensatory and punitive damages?

6. Were plaintiffs liable to defendant Roberts on his foreclosure?

7. Sufficiency of the evidence to support an award of compensatory and punitive damages for slander.

■■ The first issue for review concerns the existence of a contract to construct the house for $32,000, including the $6,500 paid for the lots. The homeowner contends that such an oral contract was made at a meeting held in the office of the lumber company on July 7, 1964 at which meeting the homeowner, the builder, and defendant Chauner representing the lumber company and the subdivision developers were present.

Mr. McCusker's testimony summarizes the homeowner's evidence:

"Q. Well, anyway, you already said what Mr. Roberts said about that and what was the final agreement, if any, which was reached on July 7th? A. The final agreement was that they would build the house for $32,000.00 which included the lots and I had them repeat this several times, I had sort of an uneasy feeling that something wasn't right, I think my subconscious mind was trying to tell me something but anyway I had them repeat it several times and finally my wife got mad at me because she thought I was running it into the ground and they repeated several times that they would agree to build a house for $32,000.00 and that included the lot.

"Q. Who agreed to that? A. Roberts and Chauner.

"Q. Did you agree? A. And, I said, 'If this is the definite agreement that it won't cost us anymore than that then you can go ahead and build the house.' "

Elisabeth McCusker testified to like effect.

This testimony is directly contradicted by defendant Roberts. His testimony is summarized in the following exchange:

"Q. Now, Mr. Roberts, was there ever a meeting where there was an agreement by you and Mr. Chauner to build a house for the McCuskers for $32,000 including the lot? * * * A. There was not.

"Q. What is your answer? A. There was not."

Additional circumstances appearing in the evidence tend to support defendants' position that the house construction was on a "time and material" basis and not for an agreed price of $32,000 including the cost of the lots. The plaintiffs' own testimony indicates they were not limited in any way as to the amount they could spend for electrical fixtures, plumbing, kitchen cabinets, or wallpaper. Their testimony likewise indicates that long after the alleged contract to construct for an agreed price was made, plaintiffs were engaged in procuring a bid from a materialman for linoleum, buying a medicine cabinet at a sale, and securing a reduction in price on the shingles. If the contract was for an agreed price, why would plaintiffs be concerned with the costs of these materials?

█ Proceeding to the second issue for review, plaintiffs contend that defendants committed fraud and deceit upon them. Specifically plaintiffs claim the defendants (1) entered into a contract to construct the house for $32,000 with the intention of not performing it, (2) concealed the existence of an underground water problem from them and constructed the house with a higher profile than the plans called for to compensate for this problem, and (3) breached their agreement to furnish necessary fill and topsoil for the building lot.

From what has been said heretofore, it is clear contention (1) above cannot be sustained. The jury simply did not believe there was any representation or contract to construct for $32,000 on the basis of conflicting evidence.

█ Contention (2) above likewise cannot be sustained. The evidence shows that plaintiffs looked at these lots in the spring of the year prior to purchasing them. The lots were located in the channel of natural run-off waters for a rather large area and the ground was quite wet from spring run-off. Although there was water lying on the top of the ground, excavations were dry to a depth of 10 feet with the maximum depth of the excavation for the basement only three feet.

At the time of trial the ground water in the area was within inches of reaching its annual peak and it was over 3 feet below the basement floor. No water has ever appeared in the basement since it was constructed. This constitutes substantial evidence there never was any underground water problems on the building lot. Hence there could be no fraudulent concealment of a nonexistent problem by building the house with a higher profile or otherwise.

Nor was there any failure on defendants' part to furnish the necessary fill material or topsoil. 1600 cubic yards of fill material were furnished. When plaintiffs had enough, they said so. If more was needed to bring the lot up to the grade they desired or to give the house a lower profile, they prevented it by their own actions and have no cause for complaint.

Plaintiffs further claim the defendants illegally conspired against them for defendants' joint benefit. The evidence shows there was a combination of the defendants and others in the construction of the house. The evidence also shows the defendants and others were joined together in a combination for the construction of the house by the plaintiffs themselves. Plaintiffs wanted Roberts to build the house because he was an old friend and wanted Chauner's lumber company to furnish the materials because Chauner was a friend of long standing. They bought the building lots from the subdivision developer because these lots satisfied their specifications.

But a combination of individuals for their joint benefits does not constitute a conspiracy. A conspiracy also requires either an unlawful purpose or unlawful means. Biering v. Ringling, 74 Mont. 176, 240 P. 829. A combination of persons to do a lawful thing by lawful means is not a conspiracy regardless of the number of persons involved. Empire Theatre Co. v. Cloke, 53 Mont. 183, 163 P. 107, L.R.A.1917E, 383. The actionable element of conspiracy is the wrong done to the plain-

tiffs, not the combination of persons constituting the conspiracy. Wilson v. Davis, 110 Mont. 356, 103 P.2d 149. Here there is substantial evidence to support the jury verdict there was no actionable wrong committed against the plaintiffs by defendants.

Plaintiffs' fourth issue assigned for review is whether the defendants were negligent in the construction of the house by use of inferior materials or poor workmanship. This issue requires no extended discussion. Negligence is the failure to use ordinary care under the circumstances. This is patently a jury question under the conflicting evidence and was resolved against plaintiffs by the verdict.

The fifth issue presented for review concerns whether plaintiffs are entitled to compensatory or punitive damages. The issue of plaintiffs' damages is not germane to determination of this appeal having been foreclosed by jury verdict against plaintiffs on the issue of liability. See Hanson v. Colgrove, 152 Mont., 161 447 P.2d 486.

The next issue is whether plaintiffs are liable to defendant Roberts on his counterclaim for foreclosure of a labor and materialman's lien. The amount of the lien is not in substantial controversy but only plaintiffs' liability.

The evidence shows that plaintiffs paid defendant Roberts for all labor and materials furnished for the house up to September 24, 1964. From that date until defendant Roberts was removed from the job, he furnished additional labor of $2,384.68 and additional materials of $1,404.04. When Roberts was removed from the job, the lumber company told him they would collect the bill for materials directly from plaintiffs as they were going to finish the construction of the house. Accordingly they credited Roberts' account with them for the amount charged for the materials. Subsequently plaintiffs refused to pay this amount to the lumber company, so the lumber company cancelled their credit to Roberts' account and

recharged it to Roberts. Within the lien period, Roberts filed a lien for these materials together with his labor charges.

Roberts testified that all labor and materials encompassed in his lien were used in the construction of plaintiffs' house; that the charges made therefor were the reasonable value of such materials and labor, and plaintiffs had not paid. The court instructed the jury if they found from a preponderance of the evidence that Roberts furnished such labor and materials used in the construction of plaintiffs' house and he had not been paid, the jury should find for Roberts in the amount of $3,788.72 with interest from October 13. The attorney's fees were assessed separately by the presiding judge and included in the judgment and this is not disputed herein.

There being substantial evidence to support the judgment for lien foreclosure in the amount of $5,493.92, it must be affirmed.

The final issue for review upon this appeal is the sufficiency of the evidence to support an award of $2,500 compensatory and $7,500 punitive damages for slander. The testimony concerning various alleged slanderous statements is quite voluminous. We will not endeavor to cover it all in this opinion, but will limit ourselves to some examples indicating its tenor and character.

The testimony of James Drain, the assistant manager of the Gallatin Lumber Company, concerning statements made to him by the plaintiffs is illustrative:

"Q. That was the tenure (sic) of the conversation? A. Oh, that they were disappointed in the fact that Mr. Roberts would cheat them and steal from them.

"Q. What did they say specifically about that? A. About cheating and stealing?

"Q. What did they say specifically? A. Specifically that they had proof now that materials had been stolen from the job and that materials or labor had been charged to them when in fact these carpenters were working at other jobs."

P. A. Herring, a roofing and sheet metal contractor, testified that the plaintiffs made certain statements to him as follows:

"Q. What was said? A. That there was more roofing material ordered for the job than was applied on the house, and that the labor was prohibitive, that they were charged, and that some materials which had been charged to them were used in other places, namely Phil Sawyer's house, some item of material that they knew for sure that was in Sawyer's house.

"Q. Who did they say had paid for it? A. They felt that they had paid for it.

"Q. What else was said? A. Well, Mr. McCusker and Mr. Roberts had known each other for years and that they were friends and that he was badly cheated by Milt Roberts. * * *"

Phil Sawyer and Harold Arnold who lived nearby each testified that the plaintiffs told them material and labor which plaintiffs paid for had gone into their houses.

Tom McCusker, one of the plaintiffs, admitted telling several of his friends that Roberts charged him for labor and material that did not go into their house.

False and unprivileged statements charging a person with a crime or directly tending to injure him in his trade or business constitute slander. Section 64-204, R.C.M.1947. The jury found these statements to be false by their verdict based on substantial, though conflicting, evidence. There is no claim that the statements were privileged. Plaintiffs' statements that Roberts cheated them, stole from them, and charged them for labor and materials that did not go into their house directly charges him with the crime of larceny without the aid of innuendo. See section 94-2701, R.C.M.1947. As such these statements are slanderous per se. Keller v. Safeway Stores, Inc., 111 Mont. 28, 108 P.2d 605.

In the instant case it should be noted there is no pleading or proof of special damages. However, in Montana, defamatory words that are slanderous per se carry a presumption of falsity and damages are recoverable without alle-

gation or proof of special damages. Keller v. Safeway Stores, supra. Damage flowing from such slanderous statements is presumed and compensatory damages are recoverable without proof of special damages.

Punitive damages are likewise recoverable if the defendant is guilty of oppression, fraud, or malice, actual or presumed. Section 17-208, R.C.M.1947; Johnson v. Horn, 86 Mont. 314, 283 P. 427. Where, as here, the slanderous statements were made over at least a two year period of time, to numerous people in the community, and where the speaker stated that "he was going to tack his (Roberts') hide to the wall" the jury has a basis for finding sufficient malice to justify an award of punitive damages.

The amount of the damage award, either compensatory or punitive, is peculiarly within the discretion of the jury with no fixed measure of damages applicable. Upon appeal, the verdict is open for inspection and revision by the Supreme Court to determine if the jury was guided by sound discretion and this Court should not interfere unless the damages awarded are unconscionable so as to impress the Court with its injustice, and that the jury was motivated by passion, prejudice or partiality. Keller v. Safeway Stores, Inc., supra; Johnson v. Horn, supra. In the instant case the trial judge did not so view the record and neither do we.

We have considered the entire record in the light of all arguments and contentions advanced by the homeowner and find no error. The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, JOHN C. HARRISON and BONNER, concur.