No. 12323

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

MUSTANG BEVERAGE COMPANY, INC.,

Plaintiff and Appellant,

-vs-

JOS. SCHILTZ BREWING COMPANY; WALT'S
BEVERAGES INC., et al.

Defendants and Respondents.

---

Appeal from:   District Court of the Thirteenth Judicial District,
Honorable Robert L. Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Hutton, Schiltz and Sheehy, Billings, Montana.
John C. Sheehy argued, Billings, Montana.

For Respondents:

Corette, Smith and Dean, Butte, Montana.
Kendrick Smith and Gerald R. Allen argued, Butte,
Montana.
Moulton, Bellingham, Longo and Mather, Billings,
Montana.
William S. Mather argued, Billings, Montana.

---

Submitted:   April 25, 1973

Decided: MAY 2 9 1973

Filed: MAY 2 9 1973

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from an order of the district court of the thirteenth judicial district, Yellowstone County, granting summary judgment to defendants.

Plaintiff Mustang Beverage Company, Inc., hereinafter called Mustang, brought this action to recover damages from defendant Jos. Schlitz Brewing Company, hereinafter called Schlitz, resulting from the breach of, and interference with, certain alleged contractual arrangements for the distribution of brewery products manufactured by defendant Schlitz. Defendant Brad Brown was the district representative for Schlitz in the Billings area.

Plaintiff Mustang contended the remaining defendants intended to create a monopoly in the beer business in Billings. Atlas Beverages, Inc., Fred L. Briggs Distributing Company, Inc., Ace Beverage Company and Allied Distributors, Inc., were corporations holding wholesale beer licenses from the state of Montana. Peter Decker and Fred L. Briggs were two of the three officers of the Fred L. Briggs Distributing Company, Inc., and Mustang alleged these two defendants were also officers in the Atlas Beverages, Inc. Decker, Briggs and one Carl Kemble were with the Ace Beverage Company of Miles City, Montana, and are alleged to have conspired to form Walt's Beverages, Inc.

Mustang was a duly licensed wholesale beer distributor in the state of Montana, through a permit and license issued by the Montana State Liquor Control Board. From 1958 until July 10, 1970, Mustang was the only wholesale beer distributor who distributed Schlitz products in Yellowstone, Big Horn, Carbon, Golden Valley, Musselshell and Stillwater Counties. The distribution area also included the town of Shawmut in Wheatland County.

On June 4, 1958, Mustang and Schlitz entered into a written agreement entitled "Declaration of Terms" whereunder a buyer-seller relationship was established between Schlitz as brewery seller, and Mustang as wholesale buyer. The agreement carefully set out that the relationship between the

- 2 -

parties was exclusively that of buyer and seller. The agreement could be terminated by either party at any time without cause or notice, and the buyer acknowledged that the seller had granted no franchise or exclusive territory to the buyer. Additionally, each time Mustang bought beer from Schlitz, f.o.b. Wisconsin, it ordered on a form provided by Schlitz which included the provisions from the "Declaration of Terms" as a condition of sale.

Relations between Mustang and certain personnel of Schlitz became strained. Schlitz unilaterally canceled the relationship with Mustang in a letter to it on July 10, 1970. This suit arose out of the canceled contractual relationship.

The first and essential issue on appeal is whether or not the district court erred in granting summary judgments against Mustang Beverage Company, Inc.

This Court on a number of occasions has considered the propriety of granting or denying motions for summary judgment. Rule 56(c), M.R.Civ.P., required that summary judgment be granted if:

> " * * * the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

The burden of establishing the absence of any issue of material fact is on the party seeking summary judgment. In Roope v. Anaconda Company, 159 Mont. 28, 494 P.2d 922, 924, 29 St.Rep. 170, 174, this Court held:

> "But where, as here, the record discloses no genuine issue as to any material fact, the burden is upon the party opposing the motion to present evidence of a material and substantial nature raising a genuine issue of fact."

Again in Calkins v. Oxbow Ranch, Inc., 159 Mont. 120, 495 P.2d 1124, 1125, 29 St. Rep. 244, 246, the Court stated:

> "In discussing a motion for summary judgment in
> Gallatin Tr. & Sav. Bk. v. Henke, 154 Mont. 170, 172,
> 461 P.2d 448, 449, this Court citing from Silloway v.
> Jorgenson, 146 Mont. 307, 406 P.2d 167, said:

> "' * * * the party opposing motion [for summary judgment] must present facts in proper form - conclusions of law will not suffice; and the opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, nor merely suspicions. 6 Moore's Federal Practice 2d. § 56.15 [3], pp. 2346, 2347; Hagar v. Tandy, 146 Mont. 531, 410 P.2d 477.'"

See also, Hannifin v. Butte Retail Clerks Union Number 4, ____Mont.____, ____ P.2d____, 30 St.Rep. 510.

From the record Mustang's complaint does not provide any genuine issue as to any material fact and defendants were properly granted summary judgments as a matter of law.

The second issue on appeal is whether or not the district court erred in entering summary judgments for defendants, when the depositions of eight of the nine parties involved in this action, while before the court, had not been filed, and when the district court had no independent recollection of having examined the depositions nor of having such depositions in its possession. Counsel for all parties made extensive reference to the depositions and exhibits in their briefs in the district court, and duplicate originals of the eight depositions have now been certified by the court reporter and filed with the clerk of the district court. The original depositions and exhibits could properly be considered in support of the summary judgments even if the duplicate originals had not been filed. Failure of the court reporter to file the first originals in accordance with Rule 30(f), M.R.Civ.P., was at most harmless error. No motion to suppress the use of the depositions was ever made by counsel for Mustang, even though Mustang had ample time and opportunity to discover the depositions had not been filed. Also, three of the "missing" depositions were those of Mustang's own officers. This Court finds the "missing" depositions in no way affect the district court's ruling in regard to the summary judgments.

We present the following points as they were presented in district court, as this was the basis upon which the district court granted the summary judgments.

Under the first claim of the complaint there was no unlawful conspiracy by Schlitz with any other defendant. The controlling point on this

claim is that the contract between Schlitz and Mustang specifically and clearly provided in Paragraph 5:

" * * * Buyer acknowledges that Seller has granted no franchise or exclusive territory to Buyer, and Seller may, at any time without incurring any liability to Buyer, sell its products to others in the same trade area as Buyer. * * *"

This fully signed contract is dated May 2, 1958, and was in full force and effect until July 10, 1970, when Schlitz notified Mustang that Schlitz would no longer sell beer to Mustang.

The order forms for beer as the beverage was ordered by Mustang from Schlitz also supports this position. Paragraph 5 of each order form stated the same above quoted language.

Mustang's claim is premised upon the existence of an exclusive right to distribute Schlitz products in this market area. However, the existence of the alleged exclusive right is completely belied by the very terms of the contract upon which the Mustang and Schlitz relationship was based. The contract and order forms uniformly state:

"Buyer acknowledges that seller has granted no franchise or exclusive territory to Buyer and Seller may, at any time without incurring any liability to Buyer, sell its products to others in the same trade area as Buyer."

Under the facts shown in this record any argument by Mustang that some type of right of exclusive distributorship existed is further precluded by the following language in Paragraph 6 of both the Declaration of Terms and order forms:

"6. NO PROMISE OR AGREEMENT HERETOFORE OR HEREAFTER MADE, AND NO WAIVER OR MODIFICATION OF ANY PROVISION OF THIS OR ANY OTHER AGREEMENT, SHALL BIND SELLER UNLESS IN WRITING AND SIGNED BY SELLER'S PRESIDENT, VICE PRESIDENT OR SECRETARY, EXCEPTING THAT ORDERS ARE ACCEPTED BY STAMPING SELLER'S ACCEPTANCE THEREON. As an inducement for and as part consideration of Seller's accepting any order from or making any shipment to Buyer, Buyer warrants and represents that no representation or promise inconsistent with any of the provisions of this Declaration of Terms has been made to Buyer by any officer or employee of Seller, and that Buyer has no agreement or relationship directly with Schlitz. No failure of Seller to enforce any provision hereof in any instance or instances shall be deemed a waiver of such provision in other instances, nor can the terms hereof be altered by

- 5 -

custom or usage. The rights of the parties respect-
ing all transactions shall be governed by Wisconsin
law."

Under these facts, which cannot be disputed and are not disputed, there
cannot be any possible right of recovery of any kind or character under
any of the claims.

In addition, W. J. Schumacher, an officer of Mustang, testified in
his deposition that he used these order forms in making all of his orders, and
we quote:

"Q. Now I'm going to show you what has been marked as
Defendants' Exhibit C and C-1 from the deposition of
Metz and ask you if you are acquainted with those forms.

"A. Those are order blanks.

"Q. You are acquainted with them.

"A. Yes.

"Q. And C was used as an order blank before October of
1968 and C-1 was used thereafter, is that right?

"A. I'm assuming so. We probably used them a long time
after because they would give you two or three pads at a
time and you would use them until they were finished.

"Q. Now,--

"A. And they were sent to you without telling you there
was a difference in them.

"Q. You used one or the other of these two order forms
in making all of your orders?

"A. (Nodded head in the affirmative.)

"Q. Will you respond verbally, please, sir.

"A. Yes."

Schumacher further stated in his deposition that he was aware of the printed
matter on the order forms:

"Q. In using these order forms, would you sign each of
them by your corporate name, Mustang Beverage Company,
Inc., by you or by some person in your organization?

"A. The buyer is Mustang Beverage Company (indicating).
The buyer here is by me or by a person designated by me--

"Q. Yes, sir.

"A. --and his title.

- 6 -

"Q. And you would sign each of these when you would make an order.

"A. Either me or a person that was designated by me to do it.

"Q. And you were acquainted with the reverse side of these exhibits and the printed matter contained thereon, were you not?

"A. Very much so.

"Q. Very much so. All right.

"A. The big print tells you what you're going to get and the little print what they're going to take away from you.

"Q. That would be your summary of the whole of the reverse side of C and C-1, is that right? Is that right, sir?

"A. Right.

"Q. And the big type on Exhibit C, for instance says, in bold type, or big type, 'Buyer acknowledges that Seller has granted no franchise or exclusive territory to Buyer, and Seller may, at any time without incurring any liability to Buyer, sell its products to others in the same trade area as Buyer.' You noted that.

"A. Yes.

"Q. And in the big type.

"A. Yes.

"Q. Sir?

"A. Yes."

In our view it is clear there was no contract binding upon Schlitz to continue to sell beer to Mustang nor to treat Mustang as an exclusive wholesaler.

This Court also recognizes Sinkoff Beverage Co. v. Jos. Schlitz Brewing Co., 273 N.Y.Supp.2d 364, where in a similar factual situation the New York Court held that the terms of the written agreement controlled.

Mustang had no exclusive right to distribute Schlitz products and Schlitz had the right to terminate the relationship at any time without cause and without notice. Any claim of conspiracy based upon Schlitz's exercise of that right is clearly without foundation. In McCusker v. Roberts, 152 Mont. 513, 520, 452 P.2d 408, Montana law clearly holds that:

" * * * a combination of individuals for their joint benefits does not constitute a conspiracy. * * *

> the actionable element of conspiracy is the wrong done to the plaintiffs, not the combination of persons constituting the conspiracy."

Mustang was not merchandising the Schlitz products or handling the distributorship to the satisfaction of Schlitz. Accordingly, Schlitz, in accordance with the contract rights, terminated the relationship with Mustang and entered into negotiations with the other defendants for distribution of Schlitz products in the Billings area.

Mustang also claims unlawful interference in the contractual rights between Mustang and Schlitz by all of the other defendants, except Schlitz. The controlling point is that Mustang was granted no exclusive right to distribute Schlitz products, and Mustang's allegations of interference with such an alleged right of distributorship are without foundation. The Declaration of Terms and order forms conclusively establish that Schlitz had no contractual obligations to Mustang other than a buyer-seller relationship with respect to each beer purchase order. Therefore, there could be no unlawful interference by defendant Brad Brown nor the other defendants with the contractual relations because no such contractual relations existed.

Mustang's third claim is for an alleged breach of contract on the part of Schlitz. Again, we refer to the written agreements that existed between Schlitz and Mustang. These documents establish the relationship as "exclusively that of buyer and seller and may be terminated by either party at any time, without cause and without notice." We refer to our prior comments in regard to the existence of a contract as support for the position that there was no breach of contract by Schlitz.

The fourth and fifth claims of Mustang contend that defendants conspired with each other to monopolize the wholesale beer market in the Billings area to the damage of Mustang. Since Mustang had no exclusive right to purchase from Schlitz at wholesale, Mustang's allegations of a conspiracy by the wholesalers is clearly irrelevant. The law on monopoly and conspiracy to monopolize is set forth in 58 C.J.S. Monopolies, § 15 et seq. First, the element of an injury to the public and a power to control

- 8 -

prices, which is not even remotely suggested or intimated here, and the power to suppress competition, which again was not even remotely contended by Mustang, must be present.

Of interest here is further testimony of Schumacher in his deposition and we quote:

> "Q. Now, I want you to state what facts you have of your own knowledge of meetings between the Defendants in which they conspired to deprive Mustang of its exclusive right to distribute Schlitz in its market area.
>
> "MR. SHEEHY: Now, let me hear this question, please.
>
> (Question read by reporter.)
>
> "MR. SHEEHY: I have no objection to that.
>
> "A. Rumors is all that I get."

There is no evidence in this record of any nature whatsoever whereby Mustang is restrained by contract or otherwise from exercising the beer distribution business. Mustang was cancelled by Schlitz for deficiencies in the sale and distribution of its products.

Fundamental to all of Mustang's allegations is the alleged injury to Mustang by depriving it of a "Schlitz dealership". However, we find no such "dealership" ever existed. The relationship between Schlitz and Mustang was purely one of buyer and seller. For these reasons, we affirm the district court's ruling.

_James T. Harrison_
Chief Justice

We concur:

_____

_____

_John Conway Harrison_
Associate Justices

Mr. Justice Frank I. Haswell did not participate in this cause.

- 9 -

Mr. Justice Gene B. Daly dissenting:

I respectfully dissent to the view of the majority as it relates to defendant Jos. Schlitz Brewing Company.

Rule 56 of the Montana Rules Civil Procedure setting forth the basis on which a summary judgment can be granted is essentially identical to the federal rule. In Kober & Kyriss v. Billings Deaconess Hospital, 148 Mont. 117, 121, 417 P.2d 476, this Court in discussing the requirements of that rule stated:

> "In this case, respondent has the burden of showing the absence of any genuine factual issue. 6 Moore F.P. 2d, §56.15[3] starting at p. 2335 reads:
>
> "'The courts are in entire agreement that the moving party for a summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law.
>
> "'The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.
>
> "'Since it is not the function of the trial court to adjudicate genuine factual issues at the hearing on the motion for summary judgment, in ruling on the motion all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. And the papers supporting movant's position <u>are closely scrutinized,</u> while the opposing papers <u>are indulgently treated, in</u> determining whether the movant has satisfied his burden.'" (Emphasis added).

The Court in Kober goes on to cite with approval a California case standing for the proposition that the summary judgment statute cannot be used as a substitute for the trial of issues of fact and such motions should be denied without hesitance if there existed any doubt as to the propriety of the motion.

It appears defendant Jos. Schlitz Brewing Company relies solely on the language of the original "buy-sell agreement" and the provisions printed on the back of its standard order forms, contending that those writings constitute the entire agreement existing between it and plaintiff Mustang Beverage Company.

Plaintiff Mustang Beverage Company alleged the existence of certain facts which substantially altered the nature of the contractual agreement between the parties:

1. Schlitz reserved the right to control the retail prices charged by Mustang for Schlitz products.

2. Schlitz demanded the right to inspect Mustang's books and to require that certain records and books be kept.

3. Schlitz reserved the right to set and enforce sales quotas.

4. Schlitz required that Mustang expend money in advertising and promotion, including painting of trucks, without reimbursement from Schlitz.

5. Schlitz required that Mustang keep a certain amount of inventory.

6. Schlitz set mandatory procedures for destruction, at the expense of Mustang, beer which was too old.

7. Schlitz reserved the right to object to Mustang's taking on distribution of beer products from other brewers.

8. Schlitz prescribed the method in which Schlitz products were housed in Mustang's warehouses.

Mustang further alleged the consideration provided to it by Schlitz for these various alleged conditions was an exclusive distributorship of Schlitz products in a particular area of the state. Mustang alleges this fact was admitted in sworn testimony by a district representative of Schlitz.

It would appear that there were numerous factual issues presented to the trial court. If there is any validity to the allegations made by Mustang, then the writings upon which Schlitz relies are more in the nature of an elaborate waiver of rights than an accurate representation or "integration" of the terms of the actual contractual agreement existing between these two litigants.

This case involves a sales contract between merchants, and

as such comes under the provisions of Montana's Uniform Commercial Code. Under a proper application of section 87A-2-202, R.C.M. 1947, the very fact that none of the requirements and agreements alleged by Mustang were included or even mentioned in the written contract would compel their admissibility, if provable.

I would reverse and remand this portion of the cause for trial on the merits.

_____
Associate Justice.

No. 12323

IN THE SUPREME COURT

OF THE

STATE OF MONTANA

MUSTANG BEVERAGE COMPANY, INC.,

Plaintiff and Appellant,

v.

JOS. SCHLITZ BREWING COMPANY;
WALT'S BEVERAGES, INC.; ATLAS
BEVERAGES, INC.; FRED BRIGGS
DISTRIBUTING COMPANY, INC.; ACE
BEVERAGE COMPANY; ALLIED DISTRIBUTORS,
INC.; FRED L. BRIGGS; PETER DECKER;
and BRAD BROWN,

Defendants and Respondents.

FILED

JUN 27 1973

Thomas J. Kearney

CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER

Upon the petition of Ace Beverage Company; Fred L. Briggs and Peter Decker, Defendants and Respondents named above, and the Court being satisfied that nothing appears in the record on appeal to support the statement that Briggs, Decker and Kembel were with the Ace Beverage Company of Miles City, Montana, and good cause appearing therefore;

IT IS ORDERED that the opinion in the above entitled matter dated May 29, 1973 be amended by deleting the last sentence of the third principal paragraph appearing on page 2, which reads as follows:

> "Decker, Briggs and one Carl Kembel
> were with the Ace Beverage Company of
> Miles City, Montana, and are alleged
> to have conspired to form Walt's
> Beverages, Inc."

and by inserting in its place the following:

> "Decker, Briggs and one Carl Kembel,

the latter being with the Ace Beverage Company in Miles City, Montana, are alleged to have conspired to form Wal't Beverages, Inc."

DATED this 26 day of July , 1973.

James T. Harrison
Chief Justice

-2-