No. 82-256

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STEVEN E. FAUERSO,

Plaintiff and Appellant,

vs.

MARONICK CONSTRUCTION COMPANY,

Defendant and Respondent.

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Warden, Christiansen, Johnson & Berg, Kalispell,
Montana
Gary Christiansen argued and Todd Hammer argued,
Kalispell, Montana

For Respondent:

Boone, Karlberg & Haddon, Missoula, Montana
Randy Cox argued, Missoula, Montana

Submitted: November 12, 1982

Decided: March 7, 1983

Filed: MAR 7 1983

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Steven E. Fauerso appeals from a summary judgment granted against him and in favor of Maronick Construction Company in the First Judicial District, Lewis and Clark County.

This action arose out of the collision of a 1979 Pontiac Firebird Trans Am, against a concrete retaining wall in the early morning hours of March 15, 1980, in the parking lot of the Deaconess Home in Helena, Montana. The automobile was driven by Jeff Derrickson, not a party to this action. Passengers in the vehicle were Matt Williams and the plaintiff, who at the time of the collision was asleep in the back seat. The plaintiff was severely injured in the crash and is now described as a quadriplegic.

The parties in the car, all residents of Kalispell, Montana, had come to Helena to attend a party. They left the party in the automobile and the appellant fell asleep in the back seat. The driver, Derrickson, drove around Helena for an unknown period of time. At some point, he turned south on Lamborn Street and proceeded up the hill. Lamborn Street, where the collision occurred is a dead-end street, which terminates in the parking lot of the Deaconess Home where the concrete retaining wall is located. Derrickson drove the Trans Am into the wall.

Fauerso brought suit against the City of Helena and Maronick Construction Company. Maronick had been awarded a contract for the construction of SID 341 by the City of Helena, on January 23, 1979. The project called for paving and installation of curbing on the south end of Lamborn Street, including the terminus, or cul-de-sac, which serves

as the parking lot for the Deaconess Home. The construction was completed by Maronick in late May 1979, and the last contact Maronick, through its employees, had with the project was on June 13, 1979. The SID project was inspected and accepted by the City of Helena on or before June 20, 1979.

In the District Court action, Fauerso reached a partial settlement of his claim with the City of Helena, and that party was dismissed from plaintiff's action by stipulation of counsel. On motion, the District Court granted summary judgment in favor of Maronick on the rule of nonliability established by this Court in Ulmen v. Schweiger (1932), 92 Mont. 331, 12 P.2d 856. In Ulmen, this Court stated:

> "The general rule is well established that an independent contractor is not liable for injuries for third persons, occurring after the contractor has completed the work and turned it over to the owner and employer and the same has been accepted by him . . .; the latter is substituted as the responsible party. The reason for the substitution of liability is found in the general doctrine that an action for negligence will not lie unless the defendant was under some duty to the injured party at the time and place where the injury occurred which he omitted to perform. (Citing authority.)" 92 Mont. at 354-55, 12 P.2d at 862.

On appeal, Fauerso comes to this Court contending that the holding with respect to contractor's liability in Ulmen does not represent the modern view, and that even if we should continue the Ulmen rule we should recognize an exception that the rule does not apply and the contractor may not escape liability if he turns over to the employer or the owner of the construction or project a condition resulting from the contractor's work or construction which is eminently and inherently dangerous. For this exception, Fauerso relies on Schlender v. Andy Jansen Company (Okla. 1962), 380 P.2d

3

523; and Reynolds v. Manley (1954), 223 Ark. 314, 265 S.W.2d 714.

Fauerso also contends that certain provisions of the SID contract between the City of Helena and Maronick impose contractual duties upon Maronick of which Fauerso was in effect a third party beneficiary.

In deciding this case, we do not reach the issues raised by Fauerso on this appeal for the reason that our examination of the record from the District Court does not show that a genuine issue of material fact exists upon which the liability of Maronick to Fauerso could be predicated. Rule 56, M.R.Civ.P.

The single issue of fact upon which Fauerso contends he may pin liability for Fauerso's injuries on Maronick is the contention that Maronick, through its employees, took down or removed a "dead-end street" sign that would have been situated on Derrickson's right-hand side as he drove south on Lamborn, the sign being a half block or more north of the retaining wall into which Derrickson's automobile collided.

The evidence pertaining to the dead-end street sign comes from two depositions taken in the District Court, one of Maronick's foreman, James Wildish and another from Loren E. McKerrow, M.D., who resides in a house abutting the SID project. Wildish testified:

> "Q. Okay. So then would you start at the downhill or the uphill -- did you start on the downhill or the uphill on Lamborn when you backfilled the west side of the street? A. Well, started in here with the laborers in here because there wasn't enough room between this alley and this sign that was sitting there.
>
> "Q. What sign are you talking about? A. This dead end street sign there.

4

"Q. What dead end sign? Was there a dead end sign there? A. Dead end street sign there.

"Q. Where was that? A. On this side of the alley, up on the upper side of the alley.

"Q. How far from the alley? A. Oh, I don't know. Ten feet. Ten or fifteen feet.

"Q. How far in from your curb? A. I don't remember.

"Q. And -- A. Usually sit about --

"Q. I am asking you on this particular one, if you have a recollection. A. I don't remember.

"Q. Okay. Do you want to draw that sign in where you say it was, please? Make a circle. Okay. You want to put a little arrow to that sign, please? Now what color was this sign? A. I don't remember.

"Q. What kind of construction was it? A. Kind of what?

"Q. Construction was it? Wooden or metal? A. It would be metal.

"Q. Do you have a specific recollection? A. No, but I think it is metal.

"Q. And how far was it from the curb? Can you give me a distance in feet or inches, please? A. I wouldn't know.

"Q. Are we talking ten feet? A. No.

"Q. Five feet? Can you relate it to anything in the room here? This table top, for example? A. I would say it would be two or three feet from the curb.

"Q. Okay. Now do you have a specific recollection of that? A. I remember the laborers shoveling around the sign there.

"Q. Who were the laborers? A. Joe Serati, Martin Nelson. Joe Serati is a loader operator.

"Q. Do you remember the type of post on which this sign was located? A. I don't remember.

" . . .

"Q. Mr. Wildish, at any time during the construction project did you move any signs? A. No.

5

"Q. Did you move at all this dead end sign? A. No.

". . .

"Q. Could any of your equipment operators or some of your people moved that sign? A. No.

"Q. Why do you say that? A. Because I didn't tell them to."

Dr. McKerrow testified in deposition with respect to the dead end street sign as follows:

"Q. Are you familiar with any of the markings, street markings, that were present in that area on March 14th and 15th of 1980? A. Well, there is a four-way stop sign at Winne and Lamborn in front of our house, and behind our house there had been a dead-end street marking just south of the alley on the righthand side of Lamborn going south.

". . .

"Q. Was that dead-end sign there the night of March 14, 1980? A. I am not sure of the exact dates. It was taken down when the street was widened and the Special Improvement District put in the curbs and street and all, I believe the previous fall. I do not have any recollection of any specific date when it was put up other than sometime in the spring, that following spring.

". . .

"Q. You said that you knew that the dead-end sign was removed during the course of the construction when the street was improved; did you see anyone remove that sign? A. No, I did not actually see it removed. It was just--I just recall seeing it laying there on the corner of my lots there during the construction--during the time the curbs and street were put in.

". . .

"Q. Dr. McKerrow, as I understand it, you did not see this dead-end sign taken down by anyone? A. No, the first I was aware was when it was lying there several feet away from where it had been originally in place.

"Q. So you don't know who took it down? A. No.

"Q. You are not able to say specifically when it came down except that you knew at some

6

point in time that it was up and later you saw
it down? A. Right.

"Q. Tell us, Doctor, how long the interval
was between the time that you last recall
having seen the sign in an upright position
and the time that you first saw it lying on
the ground? A. No, other than as I had said
before, just in relation to the construction,
I think it was up until the construction was
begun and then removed at that time.

"Q. But you didn't actually see it come down,
and you don't know how it came down? A.
Right.

"Q. Nor who removed it? A. Right."

Dr. McKerrow's testimony is the only evidence in the
record which connects in any way the construction work done
by Maronick to the removal of the dead end street sign. Yet
a careful perusal of his testimony discloses that Maronick is
not directly connected through the testimony with the removal
of the sign except by the merest speculation. Proof
sufficient to escape summary judgment may be made from
inferences drawn from circumstantial evidence, Brandenburger
v. Toyota Motor Sales (1973), 162 Mont. 506, 513 P.2d 268,
but not where the inference is only speculation or
conjecture. Speculation, however, is not a sufficient basis
on which to raise a genuine issue of material fact. In
Barich v. Ottenstror (1976), 170 Mont. 38, 42, 550 P.2d 395,
397, we said:

"In light of Rule 56, Montana Rules of Civil
Procedure, the party opposing a motion for
summary judgment on a record which reveals no
issue of material fact must present facts of a
substantial nature. Conclusory or speculative
statements are insufficient to raise a genuine
issue of material fact."

See Mustang Beverage Company, Inc. v. Joseph Schlitz Brewing
Company (1973), 162 Mont. 243, 246, 511 P.2d 1; National
Gypsum Company v. Johnson (1979), 182 Mont. 209, 595 P.2d
1188, 1189.

7

We therefore affirm the summary judgment granted by the District Court upon the basis that the record fails to disclose a genuine issue of material fact upon which the liability of Maronick could be predicated.

_____
                    Justice

We Concur:


_____
        Chief Justice


_____


_____


_____
        Justices

Justices Daniel J. Shea and Frank B. Morrison, Jr., will file separate opinions later.

8

No. 82-256

D I S S E N T

STEVEN E. FAUERSO,

Plaintiff and Appellant,

vs.

MARONICK CONSTRUCTION COMPANY,

Defendant and Respondent.

Justice Frank B. Morrison, Jr. and Justice Daniel J. Shea
dissenting.

FILED

MAR 31 1983

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent.

The issue in this case is whether the rule articulated in Ulmen v. Schweiger (1932), 92 Mont. 331, 12 P.2d 856, should be adhered to in Montana. That rule is stated correctly in the majority opinion and, paraphrased, the rule insulates an independent contractor from liability occurring after the contractor has completed work and returned control to the owner. Summary judgment was granted to defendant because this rule was still in existence and bound the trial court. In my opinion the rule should be discarded and the modern rule developed which allows for the liability of an independent contractor to continue for a reasonable period of time. In this case it continued for one year pursuant to the terms of contract.

The majority evaded the issue raised by the parties and, instead, made the following factual determination dispositive:

> "The single issue of fact upon which Fauerso contends he may pin liability for Fauerso's injuries on Maronick is the contention that Maronick, through its employees, took down or removed a 'dead-end street' sign that would have been situated on Derrickson's right-hand side as he drove south on Lamborn, the sign being a half block or more north of the retaining wall into which Derrickson's automobile collided."

Plaintiff was not required to show that defendant, acting through its employees, took down the sign. On the contrary, the contract specifically imposed a far greater obligation on the defendant. Section 5.11, Preservation of Private and Public Property, provided in part as follows:

> "The Contractor shall be responsible for the preservation of all public and private property, along and adjacent to the project contemplated by this contract, including without limitation, all trees, fences, curbs, posts, structures . . ."

There is evidence in the record that this sign was taken down during construction. It makes no difference whether the

9

sign was removed by the defendant. The contract imposed an absolute obligation upon the defendant, charging defendant with responsibility for preserving signs along and adjacent to the project.

The following deposition testimony makes a factual issue with respect to the sign coming down during the construction period:

Dr. Loren McKerrow:

" . . . (the sign) was taken down when the street was widened and the Special Improvement District put in the curbs and streets and all . . .

"Q: Was it lying down right where it had been initially; it hadn't been moved?

"A: Oh, I think a few feet away from where it originally was. I think they had to move it back to widen the streets and put in the curbs to it was moved in a ways from where the actual curb was then placed." (McKerrow depo. p. 5, l. 11-19; p. 7, l. 19-24).

The principle that all of the evidence must be viewed in the light most favorable to the one against whom summary judgment was granted, is too well settled to even require supportive citational authority. Here there is evidence from which a jury could find that the sign came down during the construction period. Defendant assumed a contractual obligation to reestablish the sign following completion of the work. The jury could find that defendant failed in this regard.

I would overrule Ulmen v. Schweiger, supra, and adopt the modern rule which would allow this case to go to the jury.

_____
Justice

Justice Daniel J. Shea:

I concur in the foregoing dissent of Mr. Justice Frank B. Morrison, Jr.

_____
Justice

10